## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

United States Courts
Southern District of Texas
FILED

*June 30, 2025*

Nathan Ochsner, Clerk of Court

**MATTHEW OLIVER REARDON,**
Plaintiff,

**v.**

**OFFICER WILLIAM OSTEEN**
in his individual capacity;
**SERGEANT JACK DORATY**
in his individual capacity;
**JACOB MCDOUGLE**
in his individual capacity;
**HOBY JAMES**
in his individual capacity;
**KANDIS BEAVERS**
in her individual capacity;
**JEFF BUSBY**
in his individual capacity;
**CITY OF GALVESTON;**
**UTMB HEALTH,**
**JOHN DOE OFFICERS 1–5**
**JOHN & JANE DOES 1-6**
Defendants.

CIVIL ACTION NO. _____

## COMPLAINT FOR DAMAGES
(42 U.S.C. §§ 1983, 1985, and Texas Common Law)

## JURY TRIAL DEMANDED

1

## I.    INTRODUCTION AND NATURE OF ACTION

1. This civil rights action arises under 42 U.S.C. §§ 1983 and 1985, challenging a coordinated interstate conspiracy to deprive Plaintiff Matthew Oliver Reardon of his constitutional rights through false arrest, malicious prosecution, excessive force, deliberate fabrication of evidence, and procurement of a search warrant through perjury. This case involves the systematic violation of Plaintiff's First, Fourth, and Fourteenth Amendment rights by Texas law enforcement officers acting in concert with Mississippi officials to manufacture a felony DWI charge despite conclusive evidence of Plaintiff's sobriety and apparent retaliatory animus based on Plaintiff's status as a First Amendment auditor.

2. On August 11, 2023, Defendants orchestrated Plaintiff's arrest and detention based on fabricated evidence, forced medical procedures performed pursuant to a warrant obtained through perjury, and a deliberately false enhancement claim that transformed a misdemeanor into a felony charge. This coordinated scheme resulted in Plaintiff's wrongful incarceration for approximately eleven months under a $100,000 bond, all while Defendants possessed exculpatory evidence proving Plaintiff's innocence and the falsity of the enhancement allegations.

3. Central to this case is Officer Osteen's procurement of a blood draw warrant through deliberate perjury and material misrepresentations in his sworn affidavit. As established in Franks v. Delaware, 438 U.S. 154 (1978), when law enforcement officers make material false statements in warrant affidavits with knowledge of their falsity or reckless disregard for the truth, such warrants provide no constitutional protection and all evidence obtained thereunder must be suppressed as fruit of the poisonous tree under Wong Sun v. United States, 371 U.S. 471 (1963).

4. The constitutional violations alleged herein were not isolated incidents of poor judgment, but rather the product of a deliberate, coordinated scheme involving multiple law enforcement

agencies across state lines, motivated in part by discriminatory animus against Plaintiff based on his exercise of First Amendment rights as a government accountability advocate commonly known as an "auditor."

5. This action seeks redress for violations of Plaintiff's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution, conspiracy to deprive civil rights under 42 U.S.C. § 1985, and related state law claims, including compensatory and punitive damages, declaratory relief, and injunctive relief to prevent future violations.

## II. JURISDICTION AND VENUE

6. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343 (civil rights jurisdiction). Plaintiff's claims arise under 42 U.S.C. §§ 1983 and 1985, which provide causes of action for violations of constitutional rights under color of state law.

7. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), as they form part of the same case or controversy as Plaintiff's federal claims.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise to these claims occurred in Galveston County, Texas, within the Southern District of Texas.

## III. PARTIES

### A. Plaintiff

9. Plaintiff Matthew Oliver Reardon is an individual residing in Clearfield, Utah. At all times relevant to this Complaint, Plaintiff was a visitor to Galveston, Texas, traveling through the jurisdiction when the constitutional violations alleged herein occurred. Plaintiff is an independent

investigative journalist that covers stories of public interest and is known to exercise his First Amendment rights as a government accountability advocate.

### B. Individual Defendants

10. Defendant Officer William Osteen is a sworn law enforcement officer employed by the Galveston Police Department. At all times relevant herein, Osteen was acting under color of state law within the scope of his employment. Osteen is sued in his individual capacity for money damages. Osteen was certified as a "Certified Breath Test Operator" by the State of Texas, yet deliberately misrepresented to Plaintiff that no breathalyzer equipment was available. Osteen was the primary investigating officer who initiated and pursued the false charges against Plaintiff, made material misrepresentations and perjurious statements in his warrant affidavit, deliberately omitted exculpatory evidence from his documentation, coordinated with out-of-state officials to fabricate enhancement allegations, and committed perjury in subsequent judicial proceedings. Osteen repeatedly disabled his body-worn camera audio during critical portions of the investigation, demonstrating consciousness of wrongdoing.

11. Defendant Sergeant Jack Doraty is a supervisory law enforcement officer employed by the Galveston Police Department. At all times relevant herein, Doraty was acting under color of state law within the scope of his employment. Doraty is sued in his individual capacity for money damages. Doraty was present during the constitutional violations, had supervisory authority over the officers involved, and failed to intervene to prevent or stop the violations despite clear opportunity and duty to do so.

12. Defendant Jacob McDougle is a registered nurse employed by UTMB Health who, at all times relevant herein, was acting under color of state law in conjunction with law enforcement. McDougle is sued in his individual capacity for money damages. McDougle performed the forced

4

blood draw on Plaintiff while Plaintiff was restrained by multiple officers, without Plaintiff's consent, despite Plaintiff's explicit objections and stated fear of needles, pursuant to a warrant that was procured through perjury and material misrepresentations.

13. Defendant Hoby James is a sworn law enforcement officer employed as a Deputy by the Lafayette County Sheriff's Department in Mississippi. At all times relevant herein, James was acting under color of state law. James is sued in his individual capacity for money damages. On the night of Plaintiff's arrest, James initiated contact with Galveston Police Department and provided false information regarding Plaintiff's criminal history, specifically falsely claiming that Plaintiff had sustained a final conviction for DUI in Mississippi when no such final conviction existed.

14. Defendant Kandis Beavers is a sworn law enforcement officer employed as a Deputy by the Lafayette County Sheriff's Department in Mississippi. At all times relevant herein, Beavers was acting under color of state law. Beavers is sued in her individual capacity for money damages. Beavers previously provided false testimony in Mississippi proceedings involving Plaintiff and participated in the coordinated scheme to provide false information to Texas authorities to support the fabricated felony enhancement.

15. Defendant Jeff Busby is the Circuit Clerk of Lafayette County, Mississippi. At all times relevant herein, Busby was acting under color of state law within the scope of his official duties. Busby is sued in his individual capacity for money damages. Busby provided official correspondence on county letterhead to Texas prosecutors falsely stating that no appeal was pending in Plaintiff's Mississippi case, when such an appeal was in fact pending, thereby materially contributing to the false felony enhancement.

### C. Municipal and Institutional Defendants

16. Defendant City of Galveston is a municipal corporation organized and existing under the laws of the State of Texas. The City of Galveston employs Defendants Osteen and Doraty and is responsible for their training, supervision, and discipline. The City of Galveston maintained policies, customs, and practices that were the moving force behind the constitutional violations alleged herein. The City of Galveston is sued for money damages to the extent permitted by law and for prospective injunctive and declaratory relief.

17. Defendant UTMB Health is a component of the University of Texas System and operates as a state actor providing medical services. UTMB Health employed Defendant McDougle and other medical personnel who participated in the constitutional violations alleged herein. UTMB Health is sued for money damages to the extent permitted by law and for prospective injunctive and declaratory relief.

### D. Unknown Defendants

18. Defendants John Doe Officers 1-5 are sworn law enforcement officers employed by the Galveston Police Department whose identities are currently unknown to Plaintiff. These officers participated in the physical restraint of Plaintiff during the forced blood draw and other constitutional violations. They are sued in their individual capacities for money damages.

19. Defendants John and Jane Does 1-6 are employees or agents of UTMB Health whose identities are currently unknown to Plaintiff. These individuals participated in or facilitated the forced medical procedures performed on Plaintiff pursuant to a warrant procured through fraud. They are sued in their individual capacities for money damages.

## IV. FACTUAL ALLEGATIONS

6

## A. Background and Context

20. This case arises from a coordinated, interstate conspiracy to deprive Plaintiff of his constitutional rights through the fabrication of evidence, procurement of search warrants through perjury, malicious prosecution, and excessive force. The conspiracy involved law enforcement officers and officials in both Texas and Mississippi, who communicated directly to share false information and coordinate prosecutorial actions designed to harm Plaintiff in retaliation for his previous legal challenges to Mississippi authorities and his exercise of First Amendment rights as a government accountability advocate.

21. Plaintiff's constitutional rights were violated not through isolated acts of misconduct, but through a deliberate scheme orchestrated by multiple defendants across state lines. The evidence establishes that Mississippi officials, including Defendants James, Beavers, and Busby, initiated contact with Texas authorities on the night of Plaintiff's arrest and continued to provide false information throughout the prosecution to ensure Plaintiff's continued incarceration and prosecution.

## B. The August 11, 2023 Traffic Stop and Discriminatory Targeting

22. At approximately 2:00 AM on August 11, 2023, Plaintiff was driving through Galveston, Texas, when he was pulled over by Officer Larry Murph for allegedly reckless driving. Plaintiff had not consumed any alcoholic beverages and had maintained sobriety for over three years prior to this incident.

23. Officer Murph conducted the initial stop but quickly transferred the investigation to Defendant Osteen, who assumed control of the encounter and made all subsequent decisions regarding Plaintiff's detention and arrest.

24. Upon approaching Plaintiff's vehicle, one of the first questions Defendant Osteen asked was "You an auditor man?" Osteen then informed another officer "Hey, I'm doing this one, this is an auditor." These statements, captured on body camera footage, demonstrate that Osteen's subsequent conduct was motivated not by evidence of criminal activity, but by discriminatory animus against Plaintiff based on his exercise of First Amendment rights as a government accountability advocate.

25. Throughout the encounter, Plaintiff was cooperative and compliant with lawful orders. When questioned about alcohol consumption, Plaintiff truthfully informed officers that he had not consumed alcohol and had been sober for over three years. Plaintiff explicitly and repeatedly requested to take a breathalyzer test to demonstrate his sobriety.

26. Defendant Osteen falsely claimed that the Galveston Police Department did not have access to a portable breathalyzer device and refused to allow Plaintiff to take a breath test. This representation was false, as breathalyzer equipment was available and routinely used by the department for DWI investigations, and Osteen was certified as a "Certified Breath Test Operator" by the State of Texas.

27. Instead of allowing the breath test that Plaintiff requested, Defendant Osteen insisted that Plaintiff submit to field sobriety tests. Plaintiff declined to perform field sobriety tests, citing their subjective nature and his constitutional right to refuse such tests. Plaintiff's refusal was lawful and cannot constitute probable cause for arrest.

28. Despite Plaintiff's continued cooperation, his explicit request for a breath test, his truthful statements about sobriety, and the absence of any objective indicators of intoxication, Defendant Osteen placed Plaintiff under arrest for driving while intoxicated.

## C. The Fraudulent Warrant Procurement and Perjurious Affidavit

29. Following the arrest, at approximately 2:49 AM on August 11, 2023, Defendant Osteen applied for and obtained a search warrant for Plaintiff's blood. However, as detailed in a subsequent Motion for Franks Hearing filed in the underlying criminal case, Osteen's warrant affidavit contained numerous material false statements made with knowledge of their falsity or reckless disregard for the truth.

30. Specifically, Osteen's affidavit falsely claimed he observed the following signs of alcohol intoxication: (a) "an odor of an unknown alcoholic beverage emitting from the vehicle"; (b) "Matthew to have watery, glossy eyes"; (c) "Walking: Heavy Footed"; (d) "Speech: Slurred & Thick-Tongued"; (e) "Eyes: Watery & Dilated"; and (f) "Odor of Alcoholic Beverage on breath: Moderate."

31. These statements were materially false and made with reckless disregard for the truth, as evidenced by: (a) the subsequent toxicology report showing zero alcohol content in Plaintiff's blood; (b) Osteen's own body camera footage contradicting his claims; (c) his own statements on camera clarifying that he smelled no alcohol on Plaintiff's breath, only from the vehicle; and (d) his later contradictory testimony under oath in judicial proceedings.

32. Most damaging to Osteen's credibility, he later testified under oath in Plaintiff's probation revocation hearing with completely contradictory observations, claiming Plaintiff had "pinpoint pupils" instead of dilated pupils, was "talking extremely fast" instead of having slurred, thick-tongued speech, and was "extremely jittery" instead of heavy-footed. These fundamentally opposite observations cannot both be true and demonstrate either perjury in the warrant affidavit or perjury in the subsequent testimony.

33. Additionally, Osteen deliberately omitted from his warrant affidavit the material fact that Plaintiff had explicitly requested and consented to a breathalyzer test, instead falsely characterizing Plaintiff's lawful refusal to perform subjective field sobriety tests as a "refusal" to provide a sample "in violation of the Texas Implied Consent law."

34. Under Franks v. Delaware, 438 U.S. 154 (1978), when a defendant makes a substantial preliminary showing that false statements were knowingly and intentionally, or with reckless disregard for the truth, included in a warrant affidavit, and if the allegedly false statements are necessary to the finding of probable cause, the Fourth Amendment requires that the warrant be voided and all evidence obtained thereunder be suppressed.

## D. The Forced Blood Draw Pursuant to Fraudulent Warrant

35. Following procurement of the fraudulent warrant, Defendants transported Plaintiff to UTMB Hospital for the purpose of obtaining a blood sample. Although a warrant existed, Plaintiff was never informed of its existence despite his repeated requests for legal justification for the procedure.

36. Upon arrival at UTMB Hospital, Plaintiff was escorted to a treatment room where he was surrounded by approximately six law enforcement officers, including Defendants Osteen and Doraty, along with John Doe Officers 1-5.

37. Defendant Sergeant Doraty was specifically summoned to the scene by Defendant Osteen when Plaintiff requested a supervisor. Doraty arrived at UTMB Hospital with full knowledge of the circumstances and observed the entire forced medical procedure that followed.

38. Plaintiff clearly and repeatedly stated his objection to the blood draw procedure. Plaintiff explicitly informed all present that he had a severe fear of needles and did not consent to the

procedure. Plaintiff continued to request that he be allowed to take a breath test instead of the invasive blood draw.

39. Despite Plaintiff's clear objections and explicit refusal to consent, and despite his repeated requests to see the warrant or other legal authorization, Defendants proceeded with the blood draw by force. Plaintiff was handcuffed behind his back and physically restrained by multiple officers while Defendant McDougle attempted to draw blood.

40. The initial blood draw attempt was unsuccessful, causing additional pain and trauma to Plaintiff. Defendant McDougle made multiple attempts to obtain blood, requiring repeated needle insertions while Plaintiff remained restrained and objecting.

41. Throughout the forced procedure, Plaintiff invoked his right to counsel and continued to object to the blood draw while requesting to see the warrant that authorized it. These objections and requests were ignored by all defendants present.

42. Even where a warrant exists, the execution of that warrant must be reasonable under the Fourth Amendment. The defendants' failure to inform Plaintiff of the warrant's existence, their use of excessive force to overcome his constitutional objections, and their deliberate infliction of additional pain through multiple needle insertions constituted an unreasonable execution of the warrant. See United States v. Ramirez, 523 U.S. 65 (1998).

43. Moreover, because the warrant was procured through material false statements made with reckless disregard for the truth, it provided no constitutional justification for the search under Franks v. Delaware, and the search violated Plaintiff's Fourth Amendment rights.

44. Defendant Doraty, as the supervising officer present, had the authority and duty to intervene to prevent the constitutional violations occurring in his presence. Despite having clear opportunity to

stop the unlawful conduct, Doraty failed to take any action and instead allowed the violations to proceed.

### E. The Exculpatory Evidence and Continuing Prosecution

45. On September 6, 2023, the Texas Department of Public Safety issued an official toxicology report confirming that no alcohol was detected in Plaintiff's blood sample. This report conclusively established Plaintiff's sobriety at the time of arrest and demonstrated that no probable cause existed for the DWI charge.

46. The zero blood alcohol finding also proved definitively that Officer Osteen's warrant affidavit contained materially false statements, as it would be physically impossible for Plaintiff to emit a "moderate" odor of alcohol from his breath or exhibit alcohol-related impairment symptoms while having zero alcohol in his system.

47. Despite receiving this exculpatory evidence proving both Plaintiff's innocence and the falsity of the warrant affidavit, Defendants continued the prosecution and took affirmative steps to enhance the charges against Plaintiff from a misdemeanor to a felony.

48. The enhancement from misdemeanor to felony DWI required proof that Plaintiff had sustained two or more prior DWI convictions. This enhancement was critical because it transformed what would have been a minor misdemeanor (with no alcohol detected) into a serious felony carrying substantial prison time and bond requirements.

### F. The Interstate Conspiracy and Fabrication of Enhancement Evidence

49. At exactly 2:41 AM on August 11, 2023, while Plaintiff was being transported to UTMB Hospital for the forced blood draw, Defendant Hoby James, a Deputy with the Lafayette County

Sheriff's Department in Mississippi, placed a direct phone call to the Galveston Police Department dispatch. This call is documented in official GPD call logs and represents the initiation of the interstate conspiracy alleged herein.

50. The timing of James's call—occurring during the active arrest and forced blood draw procedure—demonstrates premeditation and coordination. James specifically requested to speak with "the officer that arrested him," indicating prior knowledge of Plaintiff's arrest and the specific officers involved.

51. During subsequent calls documented in GPD records, Defendant James provided materially false information to Galveston officers regarding Plaintiff's criminal history. Specifically, James falsely represented that Plaintiff had sustained a final conviction for DUI in Mississippi, when in fact no such final conviction existed due to pending appellate proceedings that James knew were active.

52. At 4:04 AM, Defendant Kandis Beavers, who had previously provided false testimony under oath in Mississippi proceedings against Plaintiff in 2022, called Galveston PD to reinforce the false criminal history information. Beavers' participation demonstrates the coordinated nature of the conspiracy and her personal animus toward Plaintiff.

53. The false information provided by Defendants James and Beavers was material to the Texas prosecution because it formed the sole basis for the felony enhancement that transformed a misdemeanor charge (with zero blood alcohol content) into a third-degree felony carrying a $100,000 bond and potential imprisonment of two to ten years.

54. In approximately November 2023, after receiving inquiry from Galveston County prosecutors about the status of Plaintiff's Mississippi case, Defendant Jeff Busby, in his official capacity as

Circuit Clerk of Lafayette County, provided a letter on official county letterhead to the Galveston County District Attorney's Office. This letter falsely stated that no appeal was pending in Plaintiff's Mississippi DUI case.

55. Defendant Busby's representation was materially false, as an appeal was in fact pending at the time of his correspondence, and this information was readily available in the official court records under his control. The false representation was designed to make it appear that Plaintiff's Mississippi case had reached final disposition, thereby providing documentary support for the felony enhancement in Texas.

56. The coordination between Mississippi and Texas officials was not coincidental or inadvertent. The evidence establishes a clear temporal sequence: (1) Plaintiff's arrest at 2:11 AM; (2) Mississippi officials' immediate contact with Texas authorities at 2:41 AM; (3) provision of false criminal history information designed to support felony charges; (4) continued coordination to suppress exculpatory evidence; and (5) provision of false official documentation to prosecutors. This sequence demonstrates that these defendants acted in concert with the specific intent to deprive Plaintiff of his constitutional rights and to ensure his continued prosecution and incarceration.

### G. The False Indictment and Wrongful Detention

57. Based on the false information provided by the Mississippi defendants and despite possessing exculpatory evidence proving Plaintiff's sobriety, the Galveston County District Attorney's Office sought and obtained a felony indictment against Plaintiff on December 7, 2023.

58. The indictment charged Plaintiff with felony DWI – 3rd or more, falsely alleging that Plaintiff had sustained two or more prior DWI convictions. This allegation was known to be false by Texas

authorities, who had received information from Mississippi officials that contradicted the enhancement claim.

59. The false felony indictment resulted in Plaintiff being held under a $100,000 bond, which was substantially higher than would have been imposed for a misdemeanor charge or if accurate information about Plaintiff's criminal history had been provided.

60. Plaintiff remained incarcerated from August 11, 2023, through approximately July 2024, a period of nearly eleven months, due to the false charges and enhancement allegations fabricated by Defendants.

## H. The Franks Motion and Prosecutorial Capitulation

61. In February 2025, Plaintiff's criminal defense attorney filed a comprehensive Motion for Franks Hearing, documenting in detail the material false statements in Officer Osteen's warrant affidavit and presenting evidence of Osteen's perjurious conduct in subsequent proceedings.

62. The Franks motion presented compelling evidence that Osteen had committed perjury both in his warrant affidavit and in his subsequent testimony, including his false claims under oath that the toxicology report had found alcohol in Plaintiff's system when it had not.

63. Faced with overwhelming evidence of Officer Osteen's perjury and the invalidity of the search warrant, the Galveston County District Attorney's Office dismissed all charges against Plaintiff just days before the scheduled Franks hearing, explicitly stating that the State "cannot prove beyond a reasonable doubt" the charges against Plaintiff.

64. The dismissal represents a favorable termination of the prosecution for purposes of Plaintiff's malicious prosecution claims and confirms the absence of probable cause for all charges, both misdemeanor and felony.

15

65. The timing of the dismissal—immediately before a hearing where Officer Osteen would be required to defend his contradictory statements under oath—demonstrates the prosecution's recognition that the charges were unsupportable and that Osteen's conduct was indefensible.

### I. Ongoing Retaliatory Conduct and Pattern of Constitutional Violations

66. The prosecution and continued charging of Plaintiff, even after the dismissal of the felony charges, represents ongoing retaliatory conduct designed to trigger revocation of Plaintiff's probation in Mississippi and to punish him for his exercise of First Amendment rights.

67. The interstate nature of the conspiracy and the coordination between defendants in different jurisdictions establishes a pattern of conduct designed to circumvent Plaintiff's constitutional protections and deny him due process of law.

68. The evidence demonstrates that Plaintiff's targeting and prosecution were motivated not by evidence of criminal conduct, but by discriminatory animus based on his status as a First Amendment auditor and retaliatory animus for his previous legal challenges to Mississippi authorities.

## V. CLAIMS FOR RELIEF

### COUNT I: MALICIOUS PROSECUTION AND PROCUREMENT OF WARRANT THROUGH FRAUD
(42 U.S.C. § 1983 – Fourth and Fourteenth Amendments)
(Against Defendants Osteen, Doraty, James, Beavers, and Busby)

69. Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

70. Defendants Osteen, Doraty, James, Beavers, and Busby, acting under color of state law, initiated and continued criminal proceedings against Plaintiff without probable cause and through the procurement of search warrants based on material false statements.

71. Defendant Osteen procured the blood draw warrant through material misrepresentations and perjurious statements in his sworn affidavit, in violation of Franks v. Delaware, 438 U.S. 154 (1978). These false statements included but were not limited to fabricated observations of alcohol-related impairment that were contradicted by the subsequent zero blood alcohol toxicology report.

72. These defendants knew or should have known that no probable cause existed for the DWI charges, particularly the felony enhancement, as evidenced by: (a) the toxicology report showing zero alcohol in Plaintiff's system; (b) the absence of any final Mississippi conviction to support the enhancement; (c) the pending appeal that precluded any final conviction; (d) their own communications acknowledging the lack of evidence; and (e) the material contradictions in Osteen's sworn statements.

73. The defendants actively participated in the initiation and continuation of the prosecution by: (a) providing false information to prosecutors; (b) making perjurious statements in warrant affidavits; (c) omitting material exculpatory evidence from reports; (d) coordinating across state lines to maintain false charges; and (e) providing false official correspondence to support the prosecution.

74. The criminal proceedings terminated in Plaintiff's favor when the State dismissed the charges just days before the Franks hearing, explicitly acknowledging its inability to prove the charges beyond a reasonable doubt.

75. As a direct and proximate result of defendants' conduct, Plaintiff suffered severe injuries including: (a) deprivation of liberty for approximately eleven months; (b) damage to reputation and standing in the community; (c) severe emotional distress and mental anguish; (d) financial losses including legal fees and lost income; and (e) ongoing trauma and anxiety.

76. Defendants' conduct was objectively unreasonable and violated clearly established constitutional rights, including the right to be free from prosecution based on fabricated evidence and fraudulently obtained warrants, precluding any defense of qualified immunity. See Brady v. Maryland, 373 U.S. 83 (1963); Franks v. Delaware, 438 U.S. 154 (1978).

## COUNT II: UNREASONABLE SEARCH AND EXCESSIVE FORCE

(42 U.S.C. § 1983 – Fourth Amendment)

(Against Defendants Osteen, Doraty, McDougle, and John Doe Officers 1-5)

77. Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

78. Defendants subjected Plaintiff to an unreasonable search and excessive force in violation of the Fourth Amendment by conducting a blood draw pursuant to a warrant procured through fraud and by using unreasonable force in the execution of that warrant.

79. Under Franks v. Delaware, 438 U.S. 154 (1978), a search warrant obtained through material false statements made with knowledge of their falsity or reckless disregard for the truth provides no constitutional protection, and the search conducted pursuant to such a warrant violates the Fourth Amendment.

80. Even if the warrant had been validly obtained, defendants' execution of the warrant was unreasonable under the circumstances. The Fourth Amendment requires that searches be conducted in a reasonable manner. See United States v. Ramirez, 523 U.S. 65 (1998).

81. The defendants' conduct was unreasonable because they: (a) failed to inform Plaintiff of the warrant's existence despite his repeated requests for legal justification; (b) used excessive force to restrain Plaintiff during the procedure; (c) ignored his medical concerns about needles; (d) performed multiple unsuccessful needle insertions causing unnecessary pain; and (e) refused to allow him to take the breath test he had requested and consented to.

82. The physical force used to restrain Plaintiff during the blood draw was objectively unreasonable under the circumstances, as Plaintiff posed no threat to officer safety or flight risk, and the force was used solely to overcome his constitutional objection to an unlawfully obtained search warrant.

83. Defendants McDougle and John Doe Officers 1-5 actively participated in the constitutional violation by physically restraining Plaintiff and performing the blood draw despite the fraudulent nature of the warrant authorizing it.

84. Defendant Doraty, as a supervisory officer present during the violations, had the authority and duty to intervene but failed to take any action to prevent the constitutional violations.

85. The defendants' conduct was objectively unreasonable and violated clearly established constitutional rights of which a reasonable officer would have known.

## COUNT III: FIRST AMENDMENT RETALIATION

(42 U.S.C. § 1983 – First Amendment)

(Against Defendants Osteen and Doraty)

86. Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

87. Defendants Osteen and Doraty violated Plaintiff's First Amendment rights by retaliating against him for his exercise of constitutionally protected speech and expressive conduct as a government accountability advocate.

88. Plaintiff engaged in constitutionally protected activity by exercising his First Amendment rights to observe, record, and critique government conduct in his capacity as a "First Amendment auditor."

89. Defendants' immediate identification of Plaintiff as an "auditor" and Osteen's statement "I'm doing this one, this is an auditor" demonstrate that his subsequent arrest and prosecution were motivated by discriminatory animus against Plaintiff based on his exercise of First Amendment rights.

90. Defendants took adverse action against Plaintiff, including arrest, prosecution, and denial of his request for a breath test, that was motivated by his protected First Amendment activity.

91. The adverse actions taken by defendants would chill a person of ordinary firmness from continuing to engage in protected First Amendment activity. See Hartman v. Moore, 547 U.S. 250 (2006).

92. Defendants' retaliatory conduct violated clearly established First Amendment rights and is not protected by qualified immunity.

## COUNT IV: FAILURE TO INTERVENE

(42 U.S.C. § 1983 – Fourth and Fourteenth Amendments)
(Against Defendant Doraty and John Doe Officers 1-5)

93. Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

94. Defendant Doraty and John Doe Officers 1-5 had a constitutional duty to intervene to prevent the violation of Plaintiff's constitutional rights when they had the opportunity to do so.

95. These defendants observed the constitutional violations occurring in their presence, including the execution of a fraudulently obtained warrant and excessive force used against Plaintiff.

96. The defendants had sufficient time and opportunity to intervene to prevent the violations but failed to take any action to protect Plaintiff's constitutional rights.

97. The failure to intervene was objectively unreasonable under the circumstances and violated clearly established law requiring officers to prevent constitutional violations when they have the opportunity to do so.

## COUNT V: CONSPIRACY TO DEPRIVE CIVIL RIGHTS
### (42 U.S.C. § 1985(2) and (3))
### (Against All Individual Defendants)

98. Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

99. Defendants conspired among themselves and with others to deprive Plaintiff of his constitutional rights under color of state law, in violation of 42 U.S.C. § 1985(2) and (3).

100. The conspiracy involved: (a) coordination between Texas and Mississippi law enforcement officials; (b) sharing of false information to support fabricated charges; (c) procurement of search warrants through perjury; (d) suppression of exculpatory evidence; (e) provision of false official correspondence; and (f) continued prosecution despite knowledge of the charges' falsity.

101. Defendants acted pursuant to an agreement or meeting of the minds to deprive Plaintiff of his constitutional rights, as evidenced by their coordinated conduct across state lines and their mutual assistance in maintaining false charges.

102. The conspiracy was motivated by retaliatory animus against Plaintiff based on his previous legal challenges to Mississippi authorities and discriminatory animus based on his exercise of First Amendment rights as a government accountability advocate.

103. Defendants committed overt acts in furtherance of the conspiracy, including but not limited to: (a) the false arrest and prosecution; (b) the interstate communications sharing false information; (c) the procurement of fraudulent search warrants; (d) the forced blood draw; (e) the provision of false official correspondence; and (f) the maintenance of prosecution despite exculpatory evidence.

104. As a result of the conspiracy, Plaintiff suffered the injuries alleged herein, including deprivation of liberty, emotional distress, and reputational harm.

## COUNT VI: MUNICIPAL LIABILITY - DELIBERATE INDIFFERENCE

(42 U.S.C. § 1983 – Monell Claims)
(Against Defendant City of Galveston)

105. Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

106. The City of Galveston is liable under Monell v. Department of Social Services, 436 U.S. 658 (1978), for the constitutional violations committed by its employees, as these violations resulted from official municipal policies, customs, or practices that demonstrated deliberate indifference to constitutional rights.

107. The City of Galveston maintained policies, customs, or practices that were the moving force behind the constitutional violations, including: (a) inadequate training regarding constitutional requirements for warrant applications and DWI investigations; (b) failure to implement proper supervisory oversight to prevent perjury in warrant affidavits; (c) failure to discipline officers for constitutional violations and perjurious conduct; (d) customs permitting discriminatory targeting of First Amendment auditors; and (e) deliberate indifference to patterns of misconduct by officers like Osteen.

108. The City's policies and customs demonstrated deliberate indifference to the constitutional rights of individuals subjected to DWI investigations and arrests, particularly those engaged in First Amendment protected activity.

109. The constitutional violations alleged herein were not isolated incidents but reflected systemic deficiencies in the City's training, supervision, and oversight of its officers, constituting a pattern of deliberate indifference that was the moving force behind Plaintiff's injuries.

110. As a direct result of the City's policies and customs, Plaintiff suffered the constitutional violations and resulting injuries alleged herein.

## COUNT VII: INSTITUTIONAL LIABILITY
### (42 U.S.C. § 1983)
### (Against Defendant UTMB Health)

111. Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

112. UTMB Health, as a state actor, is liable for the constitutional violations committed by its employees and agents who participated in the forced blood draw procedure.

113. UTMB Health maintained policies or customs that permitted its medical personnel to perform invasive medical procedures on non-consenting individuals without independently verifying the validity of law enforcement warrants or the voluntariness of consent.

114. UTMB Health's policies demonstrated deliberate indifference to the constitutional rights of individuals subjected to forced medical procedures in conjunction with law enforcement.

115. As a direct result of UTMB Health's policies and the conduct of its employees, Plaintiff suffered constitutional violations and resulting injuries.

## COUNT VIII: STATE LAW CLAIMS

(Texas Common Law – False Imprisonment, Assault, Battery, and Intentional Infliction of Emotional Distress)

116. Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

117. False Imprisonment: Defendants intentionally confined Plaintiff without legal justification, causing him to be detained for approximately eleven months based on charges they knew to be unfounded and evidence they knew to be fabricated.

118. Assault and Battery: Defendants intentionally caused harmful and offensive contact with Plaintiff's person through the forced blood draw and physical restraint, performed pursuant to a warrant obtained through fraud and without proper legal justification.

119. Intentional Infliction of Emotional Distress: Defendants' conduct was extreme and outrageous, exceeding all bounds of human decency, and was intended to cause or recklessly disregarded the substantial likelihood of causing severe emotional distress to Plaintiff. The deliberate fabrication of evidence, procurement of warrants through perjury, and coordination of

an interstate conspiracy against Plaintiff constitutes conduct so outrageous as to exceed all bounds of human decency.

120. As a direct result of defendants' tortious conduct, Plaintiff suffered significant injuries including emotional distress, physical pain, loss of liberty, and reputational harm.

# VI. DAMAGES

121. As a direct and proximate result of Defendants' unconstitutional conduct, Plaintiff has suffered and continues to suffer significant damages, including but not limited to:


a. Compensatory Damages:

- Loss of liberty for approximately eleven months of wrongful incarceration

- Physical pain and suffering from the forced medical procedures

- Severe emotional distress, mental anguish, and psychological trauma

- Damage to reputation and standing in the community

- Lost income and earning capacity

- Medical expenses and costs related to treating psychological trauma

- Legal fees and costs incurred in defending against false charges

b. Punitive Damages:

Defendants' conduct was malicious, wanton, oppressive, and demonstrated reckless disregard for Plaintiff's constitutional rights, including deliberate perjury in warrant applications and judicial

proceedings, warranting an award of punitive damages to deter similar conduct and punish the wrongdoers.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Exercise jurisdiction over this matter and enter judgment in favor of Plaintiff and against all Defendants;

2. Award compensatory damages in an amount to be determined at trial for the injuries, losses, and damages suffered by Plaintiff;

3. Award punitive damages against all individual defendants in an amount sufficient to deter similar conduct and punish the constitutional violations, including the deliberate procurement of search warrants through perjury;

4. Award reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988;

5. Grant declaratory relief declaring that Defendants' actions violated Plaintiff's constitutional rights under the First, Fourth, and Fourteenth Amendments;

6. Grant appropriate injunctive relief to prevent similar constitutional violations in the future, including requirements for additional training on constitutional requirements for warrant applications and the rights of First Amendment auditors;

7. Grant leave to amend this Complaint as justice requires;

8. Award pre- and post-judgment interest as allowed by law; and

9. Grant such other and further relief as this Court deems just and proper.


## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable as a matter of right.

Respectfully submitted,

Matthew Oliver Reardon
Plaintiff, Pro Se
P.O. Box 160144
Clearfield, UT 84016
mreardon@wtpnews.org
(662) 701-2458

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; October 2023; All rights reserved.

Case 3:25-cv-00192 Document 2 Filed on 06/24/25 in TXSD Page 28 of 28

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED

TO SEAL

**FROM:**

Matthew Reardon
PO Box 160144
Clearfield UT 84016

**TO:**

Office of the Clerk
US District Ct
Galveston Division
601 Rosenberg
Galveston TX 77550

---

UNITED STATES
POSTAL SERVICE

**P**

Retail

US POSTAGE PAID

**$10.10**

Origin: 84025
05/22/25
4925500122-02

**PRIORITY MAIL®**

0 Lb 6.30 Oz

RDC 03

C020

EXPECTED DELIVERY DAY: 05/27/25

SHIP
TO:
601 ROSENBERG ST
GALVESTON TX 77550-1799

USPS TRACKING® #



9505 5130 0602 5142 3467 88

...d delivery date spec
...c shipments include
...acking® service incl
...international insurar
...ed internationally, ε
...s.
...es not cover certain iter
...il Manual at *http://pe.us*
...tional Mail Manual at *ht*
...p,

FLAT RATE E
ANY WEIGH

...KED IN

00001000014