## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| MATTHEW OLIVER REARDON, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 3:25-cv-00203 |
| | § | |
| OFFICER WILLIAM OSTEEN, | § | |
| SERGEANT JACK DORATY, | § | |
| JACOB MCDOUGLE, HOBY | § | |
| JAMES, KANDIS BEAVERS, | § | |
| JEFF BUSBY, CITY OF | § | |
| GALVESTON, UTMB | § | |
| HEALTH, JOHN DOE | § | |
| OFFICERS 1-5, JOHN & JANE | § | |
| DOES 1-6 | § | |
| *Defendants.* | § | |
| | § | |

## DEFENDANTS CITY OF GALVESTON'S, OFFICER OSTEEN'S, AND SERGEANT DORATY'S MOTION TO DISMISS

Defendants City of Galveston, Galveston police Officer William Osteen, and

Sergeant Jack Doraty, move the Court, through 28 U.S.C. § 1915 and FED. R. CIV.

P. 12(b)(6), to dismiss all claims asserted in this lawsuit against Movants.

# TABLE OF CONTENTS

TABLE OF CONTENTS .............................................................................................. i

TABLE OF AUTHORITIES ..................................................................................... iii

ISSUES BEFORE THE COURT ................................................................................. 1

PLAINTIFF'S PLEADING ALLEGATIONS .............................................................. 1

ARGUMENT AND AUTHORITIES ........................................................................... 5

I.      Plaintiff's claims should be dismissed under 28 U.S.C. § 1915
        and Fed. R. Civ. P. 12(b)(6). ................................................................. 5

        A.      Plaintiff fails to allege facts which show a plausible
                malicious prosecution claim. ..................................................... 7

        B.      Plaintiff fails to allege facts which show a plausible First
                Amendment claim. ................................................................... 11

        C.      Plaintiff fails to allege facts which show a plausible
                unreasonable search claim. ...................................................... 12

        D.      Plaintiff fails to allege facts which show a plausible
                excessive force claim. ............................................................... 14

        E.      Plaintiff fails to allege facts which show a plausible failure
                to intervene claim against Sergeant Doraty. ............................ 15

        F.      Plaintiff fails to allege facts which show a plausible
                conspiracy to deprive civil rights claim. .................................. 15

        G.      Plaintiff fails to allege facts which show a plausible
                governmental liability claim against the City. ......................... 18

                1.      Plaintiff fails to allege facts plausibly showing the
                        City maintained an unconstitutional governmental
                        policy. .......................................................................... 19

                2.      Plaintiff fails to allege facts plausibly showing a
                        City governmental policy of failing to train police
                        officers. ........................................................................ 20

                3.      Plaintiff fails to allege facts plausibly showing a
                        City governmental policy of failing to supervise
                        police officers. ............................................................. 23

        H.      Plaintiff fails to allege facts which show a plausible claim
                against Officer Osteen or Sergeant Doraty that is not
                barred by qualified immunity. .................................................. 24

|   |   | 1. | An objective officer could reasonably have believed probable cause arguably supported Plaintiff's arrest and prosecution. ...................................................25 |
|---|---|---|---|
|   |   | 2. | An objective officer could reasonably have believed the force used did not clearly violate established constitutional law. ......................................................... 26 |
|   |   | 3. | Legal authority did not inform Officer Osteen or Sergeant Doraty his conduct violated clearly established law. ........................................................... 28 |
|   | II. | | Texas laws of immunity bar Plaintiff's state law claims. .................. 28 |
|   | III. | | The City is immune from claims for punitive damages.................... 30 |

CONCLUSION AND PRAYER ............................................................................... 30

CERTIFICATE OF SERVICE .................................................................................. 31

# TABLE OF AUTHORITIES

**Federal Cases**

*Albright v. Oliver*,
  510 U.S. 266 (1994).........................................................................................9

*Anderson v. Creighton*,
  483 U.S. 635 (1987)..................................................................................25, 26

*Armstrong v. Ashley*,
  60 F.4th 262 (5th Cir. 2023) .........................................................................8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................................6, 7

*Babb v. Dorman*,
  33 F.3d 472 (5th Cir. 1994) .........................................................................26

*Baker v. McCollan*,
  443 U.S. 137 (1979).......................................................................................9

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................................6, 7

*Benfer v. City of Baytown*,
  120 F.4th 1272 (5th Cir. 2024) .....................................................................4

*Bennett v. City of Slidell*,
  728 F.2d 762 (5th Cir.) (en banc), *cert. denied*, 472 U.S. 1016 (1985).......................19

*Board of the Cty. Comm. Of Bryan Cty. Oklahoma v. Brown*,
  520 U.S. 397 (1997)................................................................................19, 21

*Brosseau v. Haugen*,
  543 U.S. 194 (2004) (per curiam)................................................................28

*Brown v. Bryan County*,
  219 F.3d 450 (5th Cir. 2000) .......................................................................24

*Brumfield v. Hollins*,
  551 F.3d 322 (5th Cir. 2008) .......................................................................22

*Buehler v. Dear*,
  27 F.4th 969 (5th Cir. 2022) .........................................................................8

*Burge v. St. Tammany Parish*,
    336 F.3d 363 (5th Cir. 2003) ................................................................................... 23

*Causey v. Sewell Cadillac-Chevrolet, Inc.*,
    394 F.3d 285 (5th Cir. 2004) ...................................................................................... 4

*City of Los Angeles v. Mendez*,
    581 U.S. 420 (2017) ................................................................................................... 14

*Collins v. Morgan Stanley Dean Witter*,
    224 F.3d 496 (5th Cir. 2000) ...................................................................................... 4

*Connick v. Thompson*,
    560 U.S. 51 (2011) ..................................................................................................... 18

*Cousin v. Small*,
    325 F.3d 627 (5th Cir. 2003) ................................................................................... 24

*Covington v. City of Madisonville*,
    812 Fed. Appx. 219 (5th Cir. 2020) ............................................................................ 3

*Cuadra v. Houston Independent School District*,
    626 F.3d 808 (5th Cir. 2010) ...................................................................................... 8

*Estate of Davis v. City of N. Richland Hills*,
    406 F.3d 375 (5th Cir. 2005) ........................................................................ 21, 22, 24

*Devenpeck v. Alford*,
    543 U.S. 146 (2004) ................................................................................................... 10

*District of Columbia v. Wesby*,
    583 U.S. 48 (2018) ............................................................................................... 10, 28

*Doraty v. McClarin*,
    851 F.3d 389 (5th Cir. 2017) ................................................................................... 28

*Flores v. City of Palacios*,
    381 F.3d 391 (5th Cir. 2004) ................................................................................... 14

*Forgan v. Howard Cnty.*,
    494 F.3d 518 (5th Cir. 2007) ................................................................................... 29

*Franks v. Delaware*,
    438 U.S. 154 (1978) ................................................................................................... 13

iv

*Freeman v. County of Bexar*,
210 F.3d 550 (5th Cir. 2000) ...................................................................................... 13

*Freeman v. Gore*,
483 F.3d 404 (5th Cir. 2007) ...................................................................................... 14

*Gerstein v. Pugh*,
420 U.S. 103 (1975)...................................................................................................... 9

*Glenn v. City of Tyler*,
242 F.3d 307 (5th Cir. 2001) ...................................................................................... 10

*Gonzalez v. Kay*,
577 F.3d 600 (5th Cir. 2009) ........................................................................................ 6

*Graham v. Connor*,
490 U.S. 386 (1989)...................................................................................... 10, 14, 15

*Graves v. Hampton*,
1 F.3d 315 (5th Cir. 1993).............................................................................................. 5

*Green v. State Bar*,
27 F.3d 1083 (5th Cir. 1994) ......................................................................... 16, 17, 18

*Griffin v. Breckinridge*,
403 U.S. 88 (1971)....................................................................................................... 16

*Groden v. City of Dallas*,
826 F.3d 280 (5th Cir. 2016) ...................................................................................... 20

*Haggerty v. Texas Southern University*,
391 F.3d 653 (2004)..................................................................................................... 10

*Hall v. Trochessett*,
105 F.4th 335 (5th Cir. 2024) ................................................................................... 4, 8

*Harmon v. City of Arlington*,
16 F.4th 1159 (5th Cir. 2021) ....................................................................................... 4

*Hart v. O'Brien*,
127 F.3d 424 (5th Cir. 1997) ...................................................................................... 13

*Henderson v. Harris Cnty.*,
51 F.4th 125 (5th Cir. 2022) ....................................................................................... 23

*Hilliard v. Ferguson*,
  30 F.3d 649 (5th Cir. 1994) ....................................................................................... 16

*Hunter v. Bryant*,
  502 U.S. 224 (1991) (per curiam)........................................................................ 25, 26

*Hutcheson v. Dall. Cty.*,
  994 F.3d 477 (5th Cir. 2021) ..................................................................................... 23

*Illinois v. Gates*,
  462 U.S. 213 (1983)...................................................................................... 10, 11, 26

*Inclusive Cmtys Project, Inc. v. Lincoln Prop. Co*,
  920 F.3d 890 (5th Cir. 2019) ....................................................................................... 4

*Irwin v. Veterans Admin.*,
  874 F.2d 1092 (5th Cir. 1989) .............................................................................. 17, 18

*Izen v. Catalina*,
  398 F.3d 363 (5th Cir. 2005) ..................................................................................... 12

*Johnson v. Bowe*,
  856 Fed. Appx. 487 (5th Cir. 2021)............................................................................ 12

*Joseph v. Bartlett*,
  981 F.3d 319 (5th Cir. 2020) ..................................................................................... 15

*Justin S. v. Waxahachie Ind. Sch. Dist.*,
  2023 WL 2609320 (5th Cir. Mar. 23, 2023)................................................................. 4

*Kaley v. United States*,
  571 U.S. 320 (2014)................................................................................................... 10

*Kane Enters. v. MacGregor (USA) Inc.*,
  322 F.3d 371 (5th Cir. 2003) ....................................................................................... 4

*Keenan v. Tejeda*,
  290 F.3d 252 (5th Cir. 2002) ..................................................................................... 12

*Kush v. Rutledge*,
  460 U.S. 719 (1983)........................................................................................ 16, 17, 18

*Liggins v. Duncanville*,
  52 F.4th 953 (5th Cir. 2022) ...................................................................................... 24

*Loftin v. Prentiss*,
  33 F.4th 774 (5th Cir. 2022) ...................................................................... 8

*Mangieri v. Clifton*,
  29 F.3d 1012 (5th Cir. 1994) .................................................................... 25

*McLin v. Ard*,
  866 F.3d 682 (5th Cir. 2017) ...................................................................... 5

*McNabb v. United States*,
  318 U.S. 332 (1943) .................................................................................... 9

*Melton v. Phillips*,
  875 F.3d 256 (5th Cir. 2017) (en banc) ................................................... 28

*Mendenhall v. Riser*,
  213 F.3d 226 (5th Cir. 2000) ................................................... 12, 13, 26

*Monell v. New York City Department of Social Services*,
  436 U.S. 658 (1978) .................................................................................. 19

*Morgan v. Swanson*,
  659 F.3d 359 (5th Cir. 2011) .................................................................... 27

*Newport v. Fact Concerts*,
  453 U.S. 247 (1981) .................................................................................. 30

*Nixon v. City of Houston*,
  511 F.3d 494 (5th Cir. 2007) .................................................................... 29

*Peña v. City of Rio Grande City*,
  897 F.3d 613 (5th Cir. 2018) ................................................. 5, 18, 23, 24

*Peterson v. City of Fort Worth*,
  588 F.3d 838 (5th Cir. 2009) ............................................................. 21, 22

*Pfannstiel v. City of Marion*,
  918 F.2d 1178 (5th Cir. 1990) ........................................................... 25, 27

*Phillips next friend of J.H. v. Prator*,
  2021 WL 3376524 (5th Cir. Aug. 3, 2021) ................................................ 4

*Pierson v. Ray*,
  386 U.S. 547 (1967) ............................................................................ 10, 25

*Pineda v. City of Houston,*
 291 F.3d 325 (5th Cir. 2002) ...................................................................................... 20

*Piotrowski v. City of Houston,*
 237 F.3d 567 (5th Cir. 2001) ................................................................... 19, 20, 21, 22

*Plumhoff v. Rickard,*
 572 U.S. 765 (2012) .................................................................................................... 27

*Propes v. Mays,*
 169 Fed. Appx. 183 (5th Cir. 2006) (per curiam) ...................................................... 16

*R2 Investments LDC v. Phillips,*
 401 F.3d 638 (5th Cir. 2005) ....................................................................................... 7

*Reardon v. Mississippi, et al.,*
 2021 WL 1914245 (N.D. Miss., April 5, 2021) ........................................................... 5

*Reardon v. State of Mississippi, et al.,*
 2021 WL 1910087, Cause No. 3:20-CV-327-DMB-JMV (N.D. Miss.,
 May 21, 2021) .............................................................................................................. 5

*Richardson v. Spurlock,*
 260 F.3d 495 (5th Cir. 2001) ....................................................................................... 5

*Roberts v. City of Shreveport,*
 397 F.3d 287 (5th Cir. 2005) ................................................................................. 20, 21

*Robinson v. Hunt County,*
 921 F.3d 440 (5th Cir. 2019) ..................................................................................... 30

*Rodriguez v. Avita,*
 871 F.2d 552 (5th Cir. 1989) ..................................................................................... 21

*Roebuck v. Diamond Detective Agency,*
 484 F. App'x 976 (5th Cir. 2012) .............................................................................. 18

*Rogers v. Hall,*
 46 F.4th 308 (5th Cir. 2022) ...................................................................................... 27

*Saldana v. Garza,*
 684 F.2d 1159 (5th Cir. 1982) .............................................................................. 26, 27

*Schultea v. Wood,*
 47 F.3d 1427 (5th Cir. 1995) (en banc) ..................................................................... 25

*Scott v. Harris*,
550 U.S. 194 (2001) .......................................................................................................... 4

*Smith v. Heap*,
31 F.4th 905 (5th Cir. 2022) ...................................................................................... 7, 29

*Snyder v. Trepagnier*,
142 F.3d 791 (5th Cir. 1998) ..................................................................... 19, 20, 21, 24

*Solis v. Serrett*,
31 F.4th 975 (5th Cir. 2022) ...................................................................................... 27, 28

*Southard v. Texas Board of Criminal Justice*,
114 F.3d 539 (5th Cir. 1997) ........................................................................................ 24

*Southland Sec. Corp. v. Inspire Solutions, Inc.*,
365 F.3d 353 (5th Cir. 2004) .......................................................................................... 7

*Spiller v. City of Texas City*,
130 F.3d 162 (5th Cir. 1997) ........................................................................................ 18

*Tarver v. City of Edna*,
410 F.3d 745 (5th Cir. 2005) .................................................................................. 14, 15

*Taylor v. Gregg*,
36 F.3d 453 (5th Cir. 1994) .......................................................................................... 29

*Texas v. Brown*,
460 U.S. 730 (1983)....................................................................................................... 11

*Thompson v. Clark*,
142 S. Ct. 1332 (2022)................................................................................................. 7, 8

*Thompson v. Upshur County*,
245 F.3d 447 (5th Cir. 2001) ........................................................................................ 24

*Trevino v. Iden*,
79 F.4th 524 (5th Cir. 2023) .......................................................................................... 8

*U.S. v. Adcock*,
756 F.2d 346 (5th Cir. 1985) (PER CURIAM) ............................................................... 11

*U.S. v. Antone*,
753 F.2d 1301 (5th Cir. 1985) ...................................................................................... 11

*U.S. v. Garcia*,
179 F.3d 265 (5th Cir. 1999) ..................................................................................... 11

*United States v. Brouillette*,
478 F.2d 1171 (5th Cir. 1973) ................................................................................... 13

*Valle v. City of Houston*,
613 F.3d 536 (5th Cir. 2010) ..................................................................................... 23

*Vann v. City of Southaven*,
884 F.3d 307 (5th Cir. 2018) (per curiam).................................................................. 28

*Vincent v. City of Sulphur*,
805 F.3d 543 (5th Cir. 2015) ..................................................................................... 27

*Vulcan Materials Co. v. City of Tehuacana*,
238 F.3d 382 (5th Cir. 2001) ....................................................................................... 7

*Webster v. Houston*,
735 F.2d 838 (5th Cir. 1984) ..................................................................................... 22

*Wei-Ping Zeng v. Tex. Tech Univ. Health Sci. Ctr.*,
836 Fed. Appx. 203 (5th Cir. 2020)............................................................................ 30

*Wells v. Bonner*,
45 F.3d 90 (5th Cir. 1995)............................................................................................ 9

*White v. Pauly*,
580 U.S. 73 (2017)...................................................................................................... 28

*Williams v. Bramer*,
180 F.3d 699 (5th Cir. 1999) ............................................................................... 15, 16

*Winfrey v. Rogers*,
901 F.3d 483 (5th Cir. 2018) ..................................................................................... 13

*Wood v. Bexar Cnty., Tex.*,
147 F.4th 534 (5th Cir. 2025) .................................................................................... 13

*Worsham v. Pasadena*,
881 F.2d 1336 (5th Cir. 1989) ................................................................................... 18

*Zarnow v. City of Wichita Falls Tex.*,
614 F.3d 161 (5th Cir. 2010) ..................................................................................... 21

## State Cases

*City of La Porte v. Barfield*,
   898 S.W.2d 288 (Tex. 1995)...................................................................................... 30

*City of Watauga v. Gordon*,
   434 S.W.3d 586 (Tex. 2014)...................................................................................... 29

*Mission Consolidated Independent School District. v. Garcia*,
   253 S.W.3d 653 (Tex. 2008)...................................................................................... 30

*Morgan v. City of Alvin*,
   175 S.W. 3d 408 (Tex. App.—Houston [1st Dist.] 2004, no pet.) .............................. 29

*Pineda v. City of Houston*,
   175 S.W.3d 276 (Tex. App.—Houston [1st Dist.] 2004, no pet.) ............................... 29

## Constitutions

First Amendment ........................................................................................... 1, 11

Fourth Amendment....................................................................... 8, 9, 10, 13, 28

## Statutes

28 U.S.C. § 1915 .................................................................................................. 5

42 U.S.C. § 1983 ................................................. 9, 10, 16, 18, 19, 20, 21, 22, 27

42 U.S.C. § 1985 .................................................................... 1, 15, 17, 18

TEX. CIV. PRAC. & REM. CODE § 101.021 ........................................................ 29

TEX. CIV. PRAC. & REM. CODE § 101.024 ........................................................ 30

TEX. CIV. PRAC. & REM. CODE § 101.057 ........................................................ 29

TEX. CIV. PRAC. & REM CODE § 101.106 .................................................. 29, 30

## Court Rules

FED. R. CIV. P. 12(b)(6) ............................................................................ 4, 5, 20

## ISSUES BEFORE THE COURT

1. Whether Plaintiff's allegations state a claim under the First Amendment.

2. Whether Plaintiff's allegations state a claim of malicious prosecution.

3. Whether Plaintiff's allegations state a claim of unreasonable search.

4. Whether Plaintiff's allegations state a claim of excessive force.

5. Whether Plaintiff's allegations state a claim of failure to intervene.

6. Whether Plaintiff's allegations state a claim under 42 U.S.C. § 1985.

7. Whether Plaintiff's allegations state a claim against the City of Galveston.

8. Whether Plaintiff's allegations state a claim overcoming qualified immunity.

9. Whether Plaintiff's allegations state a claim under Texas law against the City of Galveston that overcomes governmental immunity.

10. Whether Plaintiff's allegations state a claim under Texas law against any police officer that overcomes statutory official immunity.

11. Whether the City of Galveston can be held liable in punitive damages.

## PLAINTIFF'S PLEADING ALLEGATIONS

12. At approximately 2:00 AM on August 11, 2023, Plaintiff was driving through Galveston, Texas when he was pulled over for reckless driving. [Doc. 1, ¶ 22[ and [Exhibits 1-2 (dashboard videos) to this motion to dismiss]. Plaintiff admitted he could not present a valid driver license to the police officer who had stopped the Plaintiff. [Exhibit 4 (00:10)]. "Officer Murph conducted the initial stop but quickly transferred the investigation to [Officer] Osteen, who assumed control of the encounter and made all subsequent decisions regarding Plaintiff's detention and

arrest. [Doc. 1, ¶ 23]. "Officer Osteen was certified as a 'Certified Breath Test Operator' by the State of Texas. [Doc. 1, ¶ 26]. "Upon approaching Plaintiff's vehicle, one of the first questions [Officer] Osteen asked was '[y]ou an auditor man?' Officer Osteen later informed another officer, '[h]ey, I'm doing this one, this is an auditor.'" [Doc. 1, ¶ 24]; Exhibit 3 (00:49). Plaintiff denied he had consumed alcohol and offered to submit breath tests at the scene of the stop, but Plaintiff did not agree to submit to a breath test at the police station. [Doc. 1, ¶¶ 25-26]; [Exhibit 4 (02:15)]. Officer Osteen told Plaintiff that Galveston Officers do not have access to fieled breath testing equipment [Doc. 1, ¶ 26], but Plaintiff alleges this representation is false [Doc. 1, ¶ 26]. Officer Osteen asked the Plaintiff to perform standardized field sobriety tests, [Exhibit 4 (00:54), but Plaintiff refused to do so. [Doc. 1, ¶¶ 27]. Officer Osteen arrested Plaintiff. [Doc. 1, ¶¶ 28].

13. At approximately 2:49 AM, Officer Osteen applied for and obtained a search warrant for Plaintiff's blood. [Doc. 1, ¶ 29]. Plaintiff was transported to UTMB Hospital to obtain the blood sample. [Doc. 1, ¶ 35. Upon arrival at the hospital, Plaintiff objected and refused to consent to the blood draw procedure and requested that Officer Osteen's supervisor be summoned to the scene. *Id.* ¶¶ 37-38. Shortly thereafter, Sergeant Doraty arrived at the hospital. *Id.* ¶ 37. Officers handcuffed and physically restrained Plaintiff to draw his blood. *Id.* ¶ 39.

14. On the night of Plaintiff's arrest, Lafayette County Sheriff's Department Deputy Hoby James initiated contact with the Galveston Police Department and provided information regarding Plaintiff's criminal history, specifically claiming

2

that Plaintiff had sustained a final conviction for Driving Under the Influence of intoxicants in Mississippi. Plaintiff alleges the information Deputy Hoby provided to Galveston officers in this regard was inaccurate. [Doc. 1, ¶ 13]. Lafayette County Circuit Court Clerk Jeff Busby later "provided official correspondence on county letterhead to Texas prosecutors falsely stating that no appeal was pending in Plaintiff's Mississippi case, when such an appeal was in fact pending…" [Doc. 1, ¶ 15]. Officer Osteen filed the charge of driving while intoxicated against Plaintiff. [Doc. 1, ¶ 28]; Exhibit 4 (03:18).

15.     On September 6, 2023, the toxicology report was issued detecting no alcohol in Plaintiff's blood sample [Doc. 1, ¶ 45], but the laboratory toxicology report regarding methamphetamines was not issued until the following year. On December 7, 2023, the Galveston County District Attorney's Office obtained a felony DWI indictment against Plaintiff. [Doc. 1, ¶ 57]. The indictment and all charges against Plaintiff were subsequently dismissed by the Galveston County District Attorney's Office. [Doc. 1, ¶ 63].

### RECORDINGS CENTRAL TO PLAINTIFF'S CLAIMS

16.     Plaintiff alleges in his complaint that officers made verbal statements to him that were "captured on body camera footage" and that "[officer] Osteen repeatedly disabled his body-worn camera audio during critical portions of the investigation." [Doc. 1, ¶¶ 10, 24]. "When a defendant attaches documents to its motion that are referred to in the complaint and are central to the plaintiff's claims…, the court can properly consider those documents." *Covington v. City of Madisonville*, 812 Fed.

Appx. 219, 224 (5th Cir. 2020) (citing *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004); *Hall v. Trochessett*, 105 F.4th 335, 339 (5th Cir. 2024). "In so doing, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000) (emphasis added). And when a recording that is central to a plaintiff's claims[1] blatantly contradicts a plaintiff's pleading allegation such that no reasonable jury could adopt that version of the facts, the court should construe the facts established by the recording. *See Scott v. Harris*, 550 U.S. 194 (2001).

17. "[W]here video recordings are included in the pleadings, as is the case here, the video depiction of events, viewed in the light most favorable to the plaintiff, should be adopted over the factual allegations in the complaint if the video 'blatantly contradict[s]' those allegations." *Harmon v. City of Arlington*, 16 F.4th 1159, 1163 (5th Cir. 2021) (quoting *Scott*, 550 U.S. at 380); accord *Benfer v. City of Baytown*, 120 F.4th 1272, 1281 (5th Cir. 2024). Therefore, in evaluating Plaintiff's factual allegations the Court considers the recorded exhibits Movants present to the Court through this motion and the *factual* allegations Plaintiff pled that are not contradicted by the recorded exhibits.

---

[1]   In deciding a motion to dismiss brought under FED. R. CIV. P. 12(b)(6), a court may appropriately consider a recording that is central to a plaintiff's claims. *See Inclusive Cmtys Project, Inc. v. Lincoln Prop. Co*, 920 F.3d 890, 900 (5th Cir. 2019); *Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003); *B.S. b/n/f Justin S. v. Waxahachie Ind. Sch. Dist.*, 2023 WL 2609320, at n.64 (5th Cir. Mar. 23, 2023); *Phillips next friend of J.H. v. Prator*, 2021 WL 3376524, at \*1 n.1 (5th Cir. Aug. 3, 2021).

ARGUMENT AND AUTHORITIES

## I.   PLAINTIFF'S CLAIMS SHOULD BE DISMISSED UNDER 28 U.S.C. § 1915 AND FED. R. CIV. P. 12(B)(6).

18.    The Court should dismiss Plaintiff's lawsuit under 28 U.S.C. § 1915 because Plaintiff's lawsuit is frivolous, lacks an arguable basis in law or fact, and fails to state a claim for which relief could be granted. *See Richardson v. Spurlock*, 260 F.3d 495, 498 (5th Cir. 2001). "A complaint lacks an arguable basis in law if it is based on a meritless legal theory." *Id.* "Dismissal of an in forma pauperis petition under 28 U.S.C. § 1915(d) is appropriate if the district court is 'satisfied that the action is frivolous or malicious.' An action is frivolous if it 'lacks an arguable basis either in law or in fact.'" *Graves v. Hampton*, 1 F.3d 315, 317 (5th Cir. 1993).

19.    Plaintiff has a documented history of litigation dismissed under 28 U.S.C. § 1915(e)(2)(B). *Reardon v. State of Mississippi, et al.*, 2021 WL 1910087 *1, Cause No. 3:20-CV-327-DMB-JMV (N.D. Miss., May 21, 2021) (adopting *Reardon v. Mississippi, et al.*, 2021 WL 1914245 *1 (N.D. Miss., April 5, 2021). And the allegations Plaintiff presents in this suit should be similarly dismissed.

20.    Plaintiff's pleading allegations fail to state a claim under the governing standards. Pleading requirements are real and the threshold for stating a claim requires factual allegations regarding each material element necessary to sustain recovery under an actionable legal theory. *Peña v. City of Rio Grande City*, 897 F.3d 613, 621 (5th Cir. 2018). The Fifth Circuit Court, *McLin v. Ard*, 866 F.3d 682, 688 (5th Cir. 2017), and the Supreme Court hold that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

21.     In evaluating the sufficiency of a complaint, courts must first distinguish allegations which contain factual content from those that do not. The Supreme Court has instructed courts to begin their "analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. "Thread-bare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

22.     A complaint "must be supported by factual allegations." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Iqbal*, 556 U.S. at 686.

> Determining whether a complaint states a plausible claim for relief will, [], be a **context-specific task** that requires the reviewing court to draw on its **judicial experience and common sense**. But where the well-pleaded facts do not permit the court to infer more than the **mere possibility of misconduct**, the complaint has alleged – but it has **not** "**shown**" – "that the **pleader is entitled to relief**."

*Id.* at 679 (emphasis added) (internal citation omitted).

23.     "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603, (5th Cir. 2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's

liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (brackets omitted) (quoting *Twombly*, 550 U.S. at 557.

24. Listing legal standards, without providing factual matter to support each element of a claim does not state a claim. *See Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 387 (5th Cir. 2001). A court need not "strain to find inferences favorable to the plaintiffs" or "accept conclusory allegations, unwarranted deductions, or legal conclusions." *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (*quoting Southland Sec. Corp. v. Inspire Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004). "[P]leaded facts must allow a reasonable inference that the plaintiff should prevail. Facts that only *conceivably* give rise to relief don't suffice." *Smith v. Heap*, 31 F.4th 905, 910 (5th Cir. 2022).

## A. Plaintiff fails to allege facts which show a plausible malicious prosecution claim.

25. "American courts described the elements of the malicious prosecution tort as follows: (i) the suit or proceeding was 'instituted without any probable cause'; (ii) the 'motive in instituting' the suit 'was malicious,' which was often defined in this context as without probable cause and for a purpose other than bringing the defendant to justice; and (iii) the prosecution 'terminated in the acquittal or discharge of the accused.'" *Thompson v. Clark*, 142 S. Ct. 1332, 1338 (2022). Plaintiff has not alleged facts showing lack of probable cause or that Officer Osteen's motive for arresting or charging Plaintiff with driving while intoxicated on some intoxicating substance was maliciously motivated for a purpose other

than bringing Plaintiff to justice for committing a crime. *See Thompson*, 142 S. Ct. at 1337; *Armstrong v. Ashley*, 60 F.4th 262, 278-79 (5th Cir. 2023).

> **1.** **The independent intermediary doctrine bars the claims asserted against Movants.**

26.    A grand jury indicted Plaintiff based upon the occurrences which form the basis of this lawsuit. [Doc. 1, ¶¶ 57-60]. The independent intermediary doctrine establishes the existence of probable cause for Plaintiff's arrest and prosecution, and thus bars any claim premised on the propriety of Plaintiff's arrest and prosecution. *See Buehler v. Dear*, 27 F.4th 969, 990-92 (5th Cir. 2022); *Loftin v. Prentiss*, 33 F.4th 774, 782-83 (5th Cir. 2022). An intermediary's decision breaks the chain of causation linking an officer to an alleged Fourth Amendment violation, "even if the warrant application was sought and granted after the arrest took place." *Buehler* at 990; accord *Hall*, 105 F.4th at 341. Like *Buehler*, here the facts relevant to the probable cause analysis were presented to an independent judge for analysis and a warrant issued, and the facts were also presented to a Grand Jury that issued an indictment. *See Hall supra*; *Trevino v. Iden*, 79 F.4th 524, 531-535 (5th Cir. 2023); *Cuadra v. Houston Independent School District*, 626 F.3d 808, 813 (5th Cir. 2010). Plaintiff's factual allegations fail to show a claim that is not barred by application of the independent intermediary doctrine.

27.    "[T]he Galveston County District Attorney's Office sought and obtained a felony indictment against Plaintiff on December 7, 2023." [Doc. 1, ¶ 57]. Plaintiff alleges that information was inaccurate that Mississippi authorities provided to Galveston authorities about Plaintiff's former criminal convictions for driving

under the influence of intoxicants, not that the Galveston District Attorney who sought the indictment or any Galveston officer knew the information Mississippi authorities provided was inaccurate. [Doc. 1, ¶¶ 13-15, 57-60]. Moreover, Plaintiff's allegations challenge enhancement of the charge, not probable cause for the underlying charge. Furthermore, Plaintiff does not allege facts showing Officer Osteen or Sergeant Doraty provided information to the Grand Jury that tainted the indictment, much less that either officer did so maliciously. The independent intermediary doctrine bars the claims asserted against Movants.

## 2. The facts alleged do not plausibly show lack of probable cause for arrest and prosecution of Plaintiff.

28. "The Framers [of the Constitution] considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it." *Albright v. Oliver*, 510 U.S. 266, 274 (1994); *accord Wells v. Bonner*, 45 F.3d 90 (5th Cir. 1995). "'The complicated process of criminal justice is therefore divided into different parts, responsibility for which is separately vested in the various participants upon whom the criminal law relies for its vindication.'" *Gerstein v. Pugh*, 420 U.S. 103 (1975) (quoting *McNabb v. United States*, 318 U.S. 332, 343 (1943)) "Both the standards and procedures for arrest and detention have been derived from the Fourth Amendment and its common-law antecedents." *Gerstein*, 420 U.S. at 111. "The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed for every suspect released." *Baker v. McCollan*, 443 U.S. 137, 145 n. 3 (1979). An individual's innocence may be relevant in a state tort action,

but not in a § 1983 claim. *See id*.

29.     "The Fourth Amendment requires that an arrest be supported by a properly issued arrest warrant or probable cause." *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001). "Under the prevailing view in this country a peace officer who arrests someone with probable cause is not liable for false arrest [even if] the innocence of the suspect is later proved." *Pierson v. Ray*, 386 U.S. 547, 555 (1967). "A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does." *Id*.

30.     Probable cause is evaluated under an *objective reasonableness standard* viewed from the perspective of a *hypothetical* reasonable police officer on the scene. *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004); *Graham v. Connor*, 490 U.S. 386, 397 (1989). "Probable cause exists 'when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.'" *Haggerty v. Texas Southern University*, 391 F.3d 653, 655-656 (2004) (quoting *Glenn*, 242 F.3d at 313).

31.     "**Probable cause** '**is not a high bar**'" and it is not the same thing as guilt. *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (emphasis added) (quoting *Kaley v. United States*, 571 U.S. 320 (2014)). **Probable cause** "**requires only** a probability or **substantial chance of criminal activity**, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 323 (1983) (emphasis added). "The

probable cause issue must be analyzed under the 'totality of the circumstances' as to whether there is a 'fair probability' that a crime is occurring." *U.S. v. Antone*, 753 F.2d 1301, 1304 (5th Cir. 1985) (quoting *Gates supra*). "A 'fair probability' does not mean that a reasonable official would have thought it more likely than not that the defendant committed a felony." *U.S. v. Garcia*, 179 F.3d 265, 269 (5th Cir. 1999) (quoting *U.S. v. Adcock*, 756 F.2d 346, 347 (5th Cir. 1985) (PER CURIAM)). "In short, the requisite 'fair probability' is something more than bare suspicion, but need not reach the fifty percent mark." *Garcia*, 179 F.3d at 269. Probable cause for arrest "does not demand any showing that [the belief that an offense was committed] be correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730 (1983).

32. The alleged facts, augmented by recordings, show that Plaintiff drove his vehicle erratically, Plaintiff had a documented history of prior arrests for driving while intoxicated, Plaintiff refused to submit to standard field sobriety tests, Plaintiff resisted complying with the warrant authorizing a sample of Plaintiff's blood, and Plaintiff has not alleged facts showing that blood testing failed to confirm methamphetamines in Plaintiff's body while he drove in Galveston.

## B. Plaintiff fails to allege facts which show a plausible First Amendment claim.

33. To state a claim for First Amendment retaliation, a plaintiff must plead facts showing: (1) he was engaged in a constitutionally protected activity; (2) officers' actions caused Plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the officers' adverse

actions were substantially motivated against the Plaintiff's exercise of constitutionally protected conduct. *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002); *Izen v. Catalina*, 398 F.3d 363, 367 (5th Cir. 2005).

34.     Plaintiff's claim rests solely on the allegation that "[u]pon approaching Plaintiff's vehicle, one of the first questions [Officer] Osteen asked was '[y]ou an auditor man?' Officer Osteen later informed another officer, '[h]ey, I'm doing this one, this is an auditor.'" [Doc. 1, ¶ 24]; Exhibit 3 (00:49).

35.     But the recording provides pertinent context for Officer Osteen's comments, including the events that occurred between his comments. These comments provide no plausible support for a retaliation claim. The facts alleged, augmented by recordings, show instead that Plaintiff's suspected intoxication was Officer Osteen's motivation for arresting Plaintiff. As discussed *supra* regarding the malicious prosecution claim, probable cause supported Plaintiff's arrest.

36.     Plaintiff does not allege he suffered "an injury that would chill a person of ordinary firmness from continuing to engage in that activity." *Keenan*, 290 F.3d at 258. No allegation shows conduct that would "chill a person of ordinary firmness." *Johnson v. Bowe*, 856 Fed. Appx. 487, 493 (5th Cir. 2021).

## C.     Plaintiff fails to allege facts which show a plausible unreasonable search claim.

37.     The independent intermediary doctrine also bars Plaintiff's unreasonable search claim. Precedents "make clear that probable cause to search is no different than probable cause to arrest." *Mendenhall v. Riser*, 213 F.3d 226, 235 n. 18 (5th

Cir. 2000) (citing *United States v. Brouillette*, 478 F.2d 1171, 1177 (5th Cir. 1973).

38. Regardless of independent intermediary doctrine, Plaintiff has not stated an unreasonable search claim under *Franks v. Delaware*, 438 U.S. 154, 172 (1978) doctrine. Under *Franks,* a "defendant's Fourth Amendment rights are violated if (1) the affiant, in support of the warrant, includes 'a false statement knowingly and intentionally, or with reckless disregard for the truth' and (2) 'the allegedly false statement is necessary to the finding of probable cause.'" *See Winfrey v. Rogers,* 901 F.3d 483, 494 (5th Cir. 2018) (quoting *Franks* 438 U.S. 155-156).

39. If a reviewing court determines under this test that an officer violated the Fourth Amendment, to overcome a police officer's qualified immunity a plaintiff "must then demonstrate an issue of material fact as to whether any reasonably competent officer possessing the information that each officer had at the time he swore his affidavit could have concluded that a warrant should issue." *Freeman v. County of Bexar*, 210 F.3d 550, 553 (5th Cir. 2000); accord *Mendenhall*, 213 F.3d at 230-36; *Hart v. O'Brien*, 127 F.3d 424, 444-445 (5th Cir. 1997).

40. Plaintiff alleges Officer Osteen made six allegedly false statements in his search warrant affidavit: (1) Plaintiff's vehicle had an odor of an unknown alcoholic beverage, (2) Plaintiff had watery, glossy eyes, (3) Plaintiff walked heavy-footed, (4) Plaintiff's speech was slurred, (5) Plaintiff's eyes were watery and dilated, and (6) Plaintiff's breath had an odor of alcohol. [Doc. 1 ¶¶ 30, 78]. However, none of these allegedly false statements are necessary for finding probable case. *Wood v. Bexar Cnty., Tex.*, 147 F.4th 534, 547 (5th Cir. 2025) (refusal to submit to a field

sobriety testing is a relevant factor in evaluating probable cause).

41.     Plaintiff's allegations, augmented by recordings, show Plaintiff drove erratically, had a documented history of arrests for driving while intoxicated, refused to submit to standard field sobriety tests, resisted complying with the warrant authorizing a sample of Plaintiff's blood, and Plaintiff has not alleged facts showing the blood testing failed to confirm methamphetamines in Plaintiff's body. Plaintiff fails to allege facts which show a plausible unreasonable search claim.

### D.     Plaintiff fails to allege facts which show a plausible excessive force claim.

42.     The court must consider Plaintiff's excessive force claim separate from the claim of search unsupported by probable cause. *See, City of Los Angeles v. Mendez*, 581 U.S. 420, 427 (2017); *Flores v. City of Palacios*, 381 F.3d 391, 403 (5th Cir. 2004). The Court "must therefore analyze the excessive force claim without regard to whether the [detention] itself was justified." *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007). To state an excessive force claim, Plaintiff "must establish (1) an injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Ontiveros*, 564 F.3d 382; *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005). "Factors to consider include 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Graham*, 490 U.S. at 396.

43.     Plaintiff's allegation of injury from force used was pain from insertion of a needle while Plaintiff was resisting the court ordered procedure. [Doc. 1, ¶ 40]. To

state an excessive force claim, an injury must be more than *de minimis*. *See Tarver*, 410 F.3d at 752. With the authority of a search warrant, the prick of a needle during a blood test is not more than *de minimis* force. *See id.*; *Williams v. Bramer*, 180 F.3d 699, 703-04 (5th Cir. 1999).

44. The right to search authorizes reasonable force necessary to perform the search. See *Graham*, 490 U.S. at 396. A judge had issued a search warrant to draw Plaintiff's blood. [Doc. 1 ¶ 35]. Plaintiff refused to comply with the warrant, so Officer Osteen restrained Plaintiff to execute the warrant. *Id.* ¶ 38. And Plaintiff actively resisted the attempts to perform the search. [Doc. 1, ¶ 39]. Plaintiff fails to allege facts which show a plausible claim of excessive force.

### E. Plaintiff fails to allege facts which show a plausible failure to intervene claim against Sergeant Doraty.

45. An officer is liable for failure to intervene when that officer: (1) knew a fellow officer was violating an individual's constitutional rights, (2) was present at the scene of the constitutional violation, (3) had a reasonable opportunity to prevent the harm but nevertheless, (4) chose not to act. *Joseph v. Bartlett*, 981 F.3d 319, 343 (5th Cir. 2020). Officer Osteen applied for and obtained the search warrant around 2:49 AM. *Id.* ¶ 29. Plaintiff has not alleged facts, [Doc. 1 ¶¶ 93-97], which show a plausible claim against Sergeant Doraty.

### F. Plaintiff fails to allege facts which show a plausible conspiracy to deprive civil rights claim.

46. To state a claim under 42 U.S.C. § 1985(3), Plaintiff must allege facts which plausibly show: "(1) a conspiracy involving two or more persons; (2) for the

purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States." *Hilliard v. Ferguson*, 30 F.3d 649, 652-53 (5th Cir. 1994). "In doing so, the plaintiff must show that the conspiracy was motivated by a class-based animus." *Id* at 653.

47.     "To state a claim under the Equal Protection Clause, a Section 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Williams*, 180 F.3d at 705 (citation and internal quotation marks omitted). "The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based invidious discriminatory animus behind the conspirator's action." *Griffin v. Breckinridge*, 403 U.S. 88, 102 (1971).

48.     To state a claim, Plaintiff is also required to allege facts which plausibly show the existence of an unconstitutional agreement between co-conspirators. *See Green v. State Bar*, 27 F.3d 1083, 1089 (5th Cir. 1994). "[V]ague and conclusory allegations that [an individual's] equal protection rights have been violated are insufficient to raise an equal protection claim." *Propes v. Mays*, 169 Fed. Appx. 183, 185 (5th Cir. 2006) (per curiam). The alleged conspirators' actions be motivated by an intent to deprive their victims of the equal protection of the laws." *Kush v. Rutledge*, 460 U.S. 719, 725 (1983). The equal protection requirement means that there must be some racial, or perhaps otherwise class-based,

invidiously discriminatory animus behind the conspirators' action, such that the conspiracy must aim at a deprivation of the equal enjoyment of rights secured by the law to all. *Id*.

49. Thus, to state a claim under those parts of §§ 1985(2) and 1985(3), a plaintiff "must allege that two or more persons conspired to directly, or indirectly, deprive him of the equal protection of the laws or equal privileges and immunities under the laws." *Green*, 27 F.3d at 1089 (interpreting § 1985(3)). "[A] plaintiff must plead the operative facts upon which his claim is based, more than conclusory allegations." *Irwin v. Veterans Admin*., 874 F.2d 1092, 1095 (5th Cir. 1989).

50. Plaintiff has not alleged Officer Osteen or Sergeant Doraty conspired, directly or indirectly, with anyone. *See* 42 U.S.C. § 1985; *Green*, 27 F.3d at 1089. Plaintiff only makes general conclusory allegations about Mississippi law enforcement officers placing telephone calls to the "Galveston Police Department" and "Galveston PD," stating:

> Defendant Hoby James, a Deputy with the Lafayette County Sheriff's Department in Mississippi, placed a direct phone call to the Galveston Police Department dispatch. This call is documented in official GPD call logs and represents the initiation of the interstate conspiracy alleged herein.
>
> Defendant Kandis Beavers…called Galveston PD to reinforce the false criminal history information. Beavers' participation demonstrates the coordinated nature of the conspiracy and her personal animus toward Plaintiff.

[Doc. 1 ¶¶ 49, 52].

51. But Plaintiff's factual allegations do not show that any Galveston officer

knew the information the Mississippi officials provided was inaccurate, much less

that facts of any agreement of Galveston officers to utilize inaccurate information

to Plaintiffs' detriment. And additionally, Plaintiff's assertions in this regard are

general conclusory assertions, not factual allegations that satisfy the requirements

for a § 1985 claim. *Irwin*, 874 F.2d at 1095. Plaintiff also fails to allege facts that

Officer Osteen or Sergeant Doraty took any action that was motivated by an intent

to deprive Plaintiff of equal protection of the laws. *Kush*, 460 U.S. at 725.

Consequently, Plaintiff's § 1985 claim against Officer Osteen and Sergeant Doraty

should be dismissed for failure to state a claim. *See Green*, 27 F.3d at 1089;

*Roebuck v. Diamond Detective Agency*, 484 F. App'x 976, 977-78 (5th Cir. 2012).

### G. Plaintiff fails to allege facts which show a plausible governmental liability claim against the City.

52. "[U]nder § 1983, local governments are responsible only for 'their own illegal

acts.'" *Connick v. Thompson*, 560 U.S. 51, 60 (2011). "The premise that the theory

of respondeat superior does not apply in section 1983 actions brought against a

[unit of local government] has become well entrenched in our jurisprudence."

*Worsham v. Pasadena*, 881 F.2d 1336, 1339 (5th Cir. 1989). To state a claim of

governmental liability against the City, Plaintiff must "plead facts that plausibly

support each element of § 1983 [governmental] liability." *Peña*, 879 F.3d at 621.

To avoid dismissal of his claims, Plaintiff's "description of a [governmental] policy

or custom and its relationship to [a demonstrable] underlying constitutional

violation, moreover, cannot be conclusory; it must contain specific facts." *Spiller*

*v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997).

18

### 1. Plaintiff fails to allege facts plausibly showing the City maintained an unconstitutional governmental policy.

53. Plaintiff's allegations do not show an unconstitutional governmental policy of the City that caused a violation of federal rights. *See Monell v. New York City Department of Social Services*, 436 U.S. 658, 694 (1978); *Snyder v. Trepagnier*, 142 F.3d 791, 795 (5th Cir. 1998). To state a claim against the City, Plaintiff must allege facts which show: (1) an unconstitutional City policy existed; (2) that a City policymaker knowingly created or tolerated the unconstitutional policy; and (3) that the City's policy was the moving force that directly caused the violation of a Plaintiff's rights. *See Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir.) (en banc), *cert. denied*, 472 U.S. 1016 (1985). But Plaintiff has not alleged facts which identify an unconstitutional policy for which the City's policymaker may be held liable and which was the "moving force" driving individual conduct such that the identified policy caused unconstitutional treatment. *See Piotrowski v. City of Houston*, 237 F.3d 567, 578-81 (5th Cir. 2001).

54. "[Governmental] liability must be predicated upon a showing of 'fault,' not merely 'responsibility.'" *Id.* The City is entitled to insist that Plaintiff identify a City policy that Plaintiff claims caused a constitutional deprivation. *See Piotrowski*, 237 F.3d at 578-79. "[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality." *Board of the Cty. Comm. Of Bryan Cty. Oklahoma v. Brown*, 520 U.S. 397, 407 (1997). "The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged." *Id.* To hold otherwise would be a clear departure

from controlling precedent regarding municipality liability in a § 1983 claim.

55. "In addition to culpability there must be a direct causal link between the municipal policy and the constitutional deprivation." *Piotrowski*, 237 F.3d at 579. It is essential that the requirements of governmental culpability and governmental causation "not be diluted, for '[w]here a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability. *Id.* (quoting *Snyder* 142 F.3d at 798).

56. The Constitution only provides protections from a governmental agency causing a constitutional deprivation, it does not, and could not, effectively require a governmental entity to enact a transcendent policy that prevents law enforcement officers from using excessive force or making an arrest not supported by probable cause. *See Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005); *Pineda v. City of Houston*, 291 F.3d 325, 333 (5th Cir. 2002).

57. Plaintiff fails to allege facts which plausibly show an unconstitutional City of Galveston policy, much less that a governmental policy was the "moving force" in an officer's use of excessive force. Where, as here, Plaintiff fails to "allege facts that show an official policy, promulgated or ratified by the [Movant's] policymaker, under which the [Movant is] said to be liable," dismissal under Rule 12(b)(6) is appropriate. *See Groden v. City of Dallas*, 826 F.3d 280, 283-84 (5th Cir. 2016).

### 2. Plaintiff fails to allege facts plausibly showing a City governmental policy of failing to train police officers.

58. Plaintiff's pleading allegations cannot support a plausible claim based upon

alleged failure to train police officers. To state a claim for a City governmental policy of failing to train law enforcement officers, Plaintiff must allege facts which plausibly show that (1) the City failed to train its police officers; (2) a causal link between a governmental policy of not training officers and Plaintiff's alleged injuries; and (3) that the failure to train policy was a product of the City policymaker's deliberate indifference to constitutional rights. *See Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005).

59. Additionally, "[i]n order for 'liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective.'" *Zarnow v. City of Wichita Falls Tex.,* 614 F.3d 161, 170 (5th Cir. 2010). And the inadequacy of training must obviously result in a constitutional violation. *Brown*, 520 U.S. at 407; *Piotrowski*, 237 F.3d at 579.

60. To show deliberate indifference, Plaintiff must allege facts of "at least a pattern of similar incidents in which the citizens were injured." *See Peterson v. City of Fort Worth*, 588 F.3d 838, 849 (5th Cir. 2009). Generally, a "plaintiff must demonstrate '**at least a pattern** of **similar incidents** in which the **citizens were injured**...to establish the official policy requisite to municipal liability under section 1983.'" *Snyder,* 142 F.3d at 798-799 (quoting *Rodriguez v. Avita*, 871 F.2d 552, 554-55 (5th Cir. 1989)) (internal quotation and citation omitted).

61. "Prior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the **specific violation in question**." *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005) (emphasis added).

21

Plaintiff's allegations obviously fail to meet this prong of the required test. Plaintiff alleges no facts showing Sergeant Doraty, or any other officer, has a history of using force exceeding that allowed under the Constitution. Instead, Plaintiff's allegations are general criticisms of Sergeant Doraty and Officer Osteen.

62. "In the 42 U.S.C. § 1983 context, a pattern is tantamount to official policy when it is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Piotrowski* 237 F.3d at 579. Where prior incidents are used to prove a pattern, "they must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Webster v. Houston*, 735 F.2d 838, 842 (5th Cir. 1984). "It is thus clear that a plaintiff must demonstrate a pattern of abuses that transcends the error made in a single case." *Peterson,* 588 F.3d at 842 (internal citations omitted). "A pattern requires similarity and specificity; "[p]rior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question." *Peterson,* 588 F.3d at 842 (quoting *Estate of Davis*, 406 F.3d at 383). "A pattern also requires sufficiently numerous prior incidents, as opposed to "isolated instances." "*Peterson,* 588 F.3d at 842 (internal citations omitted).

63. "A limited exception for single-incident liability exists only 'where the facts giving rise to the violation are such that it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy or failure to train.'" *Brumfield v. Hollins*, 551 F.3d 322, 329

(5th Cir. 2008) (quoting *Burge v. St. Tammany Parish*, 336 F.3d 363, 372 (5th Cir. 2003)). "The single-incident exception 'is generally reserved for those cases in which **the government actor was provided no training whatsoever.'"** *Henderson v. Harris Cnty.*, 51 F.4th 125, 131 (5th Cir. 2022) (emphasis added) (citing *Hutcheson v. Dall. Cty.,* 994 F.3d 477, 483 (5th Cir. 2021) (quoting *Peña*, 879 F.3d at 624). "And it requires proving 'that the highly predictable consequence of a failure to train would result in the specific injury suffered.'" *Id.* (quoting *Hutcheson,* 994 F.3d at 482) (quoting *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010)). Plaintiff does not allege facts implicating the single incident exception in which officers receive no training whatsoever.

64. The facial deficiency of Plaintiff's pleading allegations is apparent. Plaintiff alleges no facts plausibly showing that the City has a governmental policy of failing to train officers, that the City's policymaker was deliberately indifferent, or that such a policy was the moving force that directly caused Plaintiff's alleged injuries.

**3. Plaintiff fails to allege facts plausibly showing a City governmental policy of failing to supervise police officers.**

65. To support the claim of a constitutionally deficient officer supervision or discipline policy, Plaintiff is required to allege facts which show: (1) a City governmental policy of *systematically* failing to supervise and discipline its officers; (2) a causal connection between the alleged failure to supervise and discipline officers and deprivation of Plaintiff's federal rights; and (3) that the failure to supervise and discipline officers occurred due to deliberate indifference

of the City's policymaker. *See Estate of Davis*, 406 F.3d at 381; *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001); *Southard v. Texas Board of Criminal Justice*, 114 F.3d 539, 551 (5th Cir. 1997).

66. An alleged failure to supervise claim generally requires factual allegations which "demonstrate a *pattern of violations*." *See Estate of Davis*, 406 F.3d at 383 (emphasis added) (quoting *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003)). Like a failure to train claim, this generally requires factual allegations of "at least a pattern of *similar incidents in which the citizens were injured*." *Id.* (emphasis added) (quoting *Snyder*, 142 F.3d at 798-99).

67. Showing a policy of failing to supervise and discipline, under the single incident exception, Plaintiff is required to allege facts which show the City's police officers failed to receive *any* supervision. *Liggins v. Duncanville*, 52 F.4th 953, 956 (5th Cir. 2022); *Peña*, 879 F.3d at 624; *Estate of Davis*, 406 F.3d at 386; *Brown v. Bryan County*, 219 F.3d 450, 462 (5th Cir. 2000).

68. Plaintiff alleges no facts plausibly showing the City has a governmental policy of failing to supervise or discipline officers, that the City's policymaker was deliberately indifferent, or that such a policy was the moving force that directly caused Plaintiff's alleged injuries.

## H. Plaintiff fails to allege facts which show a plausible claim against Officer Osteen or Sergeant Doraty that is not barred by qualified immunity.

69. Even if the Court construes Plaintiff's allegations to show objectively unreasonable action by either officer, Plaintiff failed to overcome Officer Osteen's

or Sergeant Doraty's qualified immunity. To state a claim against an officer who has asserted immunity, a plaintiff must "plead more than conclusions," he must allege facts that show a violation of clearly established law that overcomes qualified immunity. *See Schultea v. Wood*, 47 F.3d 1427, 1430-34 (5th Cir. 1995) (en banc). "To overcome the officer['s] qualified immunity defense, [a plaintiff] must allege facts showing that the officer[] (1) 'violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'" *Templeton*, 28 F.4th at 621 (quoting *Al-Kidd*, 563 U.S. at 731-35). Plaintiff fails to overcome the presumed immunity of either officer.

### 1. An objective officer could reasonably have believed probable cause arguably supported Plaintiff's arrest and prosecution.

70. Probable cause and immunity provide two distinct defenses to officers accused of acting without probable cause. *See Pierson*, 386 U.S. at 556-557; *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990). As discussed *supra*, the existence of probable cause defeats the claim, but also officers "who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)); *accord Mangieri v. Clifton*, 29 F.3d 1012, 1017 (5th Cir. 1994). "[I]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and [the Supreme Court has] indicated that in such cases those officials – like other officials who act in ways they reasonably believe to be lawful – should not be

personally liable." *Anderson*, 483 U.S. at 641. Therefore, even if probable cause had been lacking for Plaintiff's arrest or prosecution, Officers Osteen and Sergeant Doraty are nonetheless "entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest [Plaintiff]." *Hunter*, 502 U.S. at 228. The standard for determining if a reasonable officer could have believed probable cause supported an arrest is whether "arguable probable cause" existed. *Mendenhall*, 213 F.3d at 231; *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994).

71.     Probable cause is "a fluid concept... not readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232. "The process does not deal with hard certainties, but with probabilities..." *Id.* at 231. Facts must be "weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." *Id.* at 232. "[I]n holding our law enforcement personnel to an objective standard of behavior, [] judgment must be tempered with reason," *Saldana v. Garza*, 684 F.2d 1159, 1165 (5th Cir. 1982), and a court "cannot expect our police officers to [possess] a legal scholar's expertise in constitutional law." *Id.*

72.     If the Court finds the record fails to establish probable cause for Plaintiff's prosecution, the analysis *supra*, shows that an objective officer could have reasonably believed probable cause arguably supported the arrest and prosecution.

## 2.     An objective officer could reasonably have believed the force used did not clearly violate established constitutional law.

73.     "A defendant does not violate 'a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's

shoes would have understood that he was violating it.'" *Rogers v. Hall*, 46 F.4th 308, 312 (5th Cir. 2022) (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2012). "The precedent must also be at 'a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitely unlawful." *Solis v. Serrett*, 31 F.4th 975, 984 (5th Cir. 2022) (quoting *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015)). "This means that 'existing precedent … placed the statutory or constitutional question' confronted by the official 'beyond debate.'" *Id.* (quoting *al-Kidd*, 563 U.S. at 741). "In other words, the plaintiff must 'point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity.'" *Id.* at 312-13 (quoting *Morgan v. Swanson*, 659 F.3d 359, 371–72 (5th Cir. 2011) (citations and internal quotations omitted).

74.     "Police officers can be expected to have a modicum of knowledge regarding the fundamental rights of citizens." *Saldana*, 684 F.2d at 1164-65. "However, in holding our law enforcement personnel to an objective standard of behavior, [] judgment must be tempered with reason." *Id.* "Certainly [a court] cannot expect our police officers to [possess] a legal scholar's expertise in constitutional law." *Id.* "[I]t is clear that a police officer may be immune from liability under § 1983 even if it is later determined that probable cause for an arrest did not exist." *Saldana*, 684 F.2d at 1164. "If reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity." *Pfannstiel*, 918 F.2d at 1183.

> Foundational to our qualified immunity doctrine is the concept that we must view an officer's actions from that officer's point of view without the benefit of hindsight. From the comfort of a courtroom or chambers, it is often possible for judges to muse on how an officer could have handled a situation better. But that does not mean the officer is not entitled to qualified immunity.

*Solis*, 31 F.4th at 978.

75.     Officers Osteen and Doraty are protected by immunity because Plaintiff has not, and cannot, identify any clearly established law that placed every reasonable officer on notice that Officer Osteen's or Sergeant Doraty's action was clearly unlawful in the specific circumstances each encountered.

### 3. Legal authority did not inform Officer Osteen or Sergeant Doraty his conduct violated clearly established law.

"'[A] body of relevant case law' is usually necessary to 'clearly establish the answer' with respect to probable cause." *Wesby*, 583 U.S. at 49 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam)) (emphasis added). Each officer is presumed immune unless Plaintiff "can identify a case [opinion] where an officer acting under similar circumstances...was held to have violated the Fourth Amendment." *White v. Pauly*, 580 U.S. 73, 79 (2017); *Compare Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018) (per curiam); *with Doraty v. McClarin*, 851 F.3d 389, 392 (5th Cir. 2017); *Melton v. Phillips,* 875 F.3d 256, 266 (5th Cir. 2017) (en banc); *Vann*, 884 F.3d at 310.

## II. Texas laws of immunity bar Plaintiff's state law claims.

76.     Plaintiff asserts state law claims against Defendants for false imprisonment, assault, battery, and intentional infliction of emotional distress. [Doc. 1 ¶¶ 116-20].

But "[a] Texas governmental unit is generally immune from tort liability unless the legislature has somehow waived immunity." *Forgan v. Howard Cnty.*, 494 F.3d 518, 520 (5th Cir. 2007). The factual allegations show that the claims alleged are barred by TEX. CIV. PRAC. & REM. CODE § 101.057 and fail to satisfy the requirements of TEX. CIV. PRAC. & REM. CODE § 101.021.

77.     "[A] governmental unit does not waive its sovereign immunity to a party's claim for personal injury or death if that claim arises out of an intentional tort." *Pineda v. City of Houston*, 175 S.W.3d 276, 280-281 (Tex. App.—Houston [1st Dist.] 2004, no pet.); TEX. CIV. PRAC. & REM. CODE § 101.057(2). The alleged facts show that the claims Plaintiffs assert under Texas law regarding the propriety of force used are intentional torts that provide no basis for waiver of governmental immunity. *See City of Watauga v. Gordon*, 434 S.W.3d 586, 591-94 (Tex. 2014); *Taylor v. Gregg*, 36 F.3d 453, 457 (5th Cir. 1994); *Morgan v. City of Alvin*, 175 S.W. 3d 408, 418-19 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

78.     Sergeant Doraty and officer Osteen are also statutorily immune to Plaintiff's Texas common law claims. *See* TEX. CIV. PRAC. & REM CODE § 101.106; *Smith*, 31 F.4th at 913-14. Their alleged conduct forming the basis of Plaintiff's state law claims were official actions of the City and within the general scope of their employment with the City. Compare *Smith*, 31 F.4th at 913-14; and *Nixon v. City of Houston*, 511 F.3d 494, 498 (5th Cir. 2007).

79.     And "[r]ecovery against a government employee is barred 'when suit is filed against an employee whose conduct was within the scope of his or her employment

and the suit could have been brought against the governmental unit.' " *Wei-Ping Zeng v. Tex. Tech Univ. Health Sci. Ctr.*, 836 Fed. Appx. 203, 213 (5th Cir. 2020) (quoting *Mission Consolidated Independent School District. v. Garcia*, 253 S.W.3d 653 (Tex.2008)); *see also*, TEX. CIV. PRAC. & REM. CODE § 101.106(f).

## III. The City is immune from claims for punitive damages.

80. Punitive and exemplary damages are not recoverable from the City of Galveston under federal or Texas law. *See Newport v. Fact Concerts*, 453 U.S. 247, 271 (1981); *Robinson v. Hunt County*, 921 F.3d 440, 451 (5th Cir. 2019); and TEX. CIV. PRAC. & REM. CODE § 101.024; *City of La Porte v. Barfield*, 898 S.W.2d 288, 299 (Tex. 1995). Regardless of whether a Plaintiff otherwise stated a claim for relief, the Court should dismiss Plaintiff's punitive and exemplary damage claims.

### CONCLUSION AND PRAYER

81. For these reasons, the Court should dismiss, with prejudice, all claims asserted against Movants in this lawsuit.

Respectfully submitted,

*/s/ Norman Ray Giles*
William S. Helfand
Attorney-in-Charge
State Bar of Texas No. 09388250
S.D. Texas No. 8791
Bill.Helfand@lewisbrisbois.com
Norman Ray Giles
State Bar of Texas No. 24014084
S.D. Texas No. 26966
Norman.Giles@lewisbrisbois.com
Craft Hughes
State Bar of Texas No. 24046123
S.D. Texas. No. 566470
Craft.Hughes@lewisbrisbois.com

LEWIS BRISBOIS BISGAARD & SMITH, LLP
24 Greenway Plaza, Suite 1400
Houston, Texas 77046
(713) 659-6767
(713) 759-6830 (Fax)
*Attorneys for Defendants,*
*City of Galveston, Officer Osteen,*
*and Sergeant Doraty*

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing has been forwarded to all counsel of

record via e-mail on October 14, 2025, in accordance with the District's ECF service

rules.

Matthew Oliver Reardon
Plaintiff, *Pro Se*
P.O. Box 160144
Clearfield, UT 84016
mreardon@wtpnews.org

Emily Barnes
Texas Bar No. 24128875
S.D. Tex. Bar No. 3921742
Assistant Attorney General
Office of the Attorney General
Law Enforcement Defense Division
P.O. Box 12548, Capitol Station
Austin, TX 78711
(512) 463-2080 (phone)
(512) 370-9893 (Fax)
*Attorney for Defendants,*
*UTMB and Jacob McDougle*

*/s/ Norman Ray Giles*
Norman Ray Giles