United States District Court
Southern District of Texas

**ENTERED**

July 14, 2026

Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| MATTHEW REARDON, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:25-cv-00203 |
| | § | |
| WILLIAM OSTEEN, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION, ORDER, AND RECOMMENDATION

Plaintiff Matthew Reardon, proceeding pro se, brings this civil-rights action arising from a traffic stop and DWI arrest that he alleges were part of a retaliatory campaign by Texas and Mississippi officials. There are seven motions pending before me: (1) Reardon's motion to strike the affidavit of Defendant Jeff Busby and for sanctions (Dkt. 61); (2) Defendant Jeff Busby's motion to dismiss (Dkt. 65); (3) Defendants City of Galveston (the "City") and City police officers William Osteen and Jack Doraty's motion to dismiss (collectively "Galveston Defendants") (Dkt. 68); (4) Kandis Beavers's motion to dismiss (Dkt. 69); (5) Reardon's motion for a temporary restraining order ("TRO") (Dkt. 84); (6) Reardon's motion for leave to file a supplemental complaint (Dkt. 85); and (7) Reardon's motion to expedite consideration of his motion for a TRO (Dkt. 86).

Based on my review of the briefing, the record, and the applicable law, I deny Reardon's motion to strike and for sanctions, motion for leave to file a supplemental complaint, and motion to expedite. I recommend that: (1) Busby's motion to dismiss for lack of personal jurisdiction be granted; (2) the Galveston Defendants' and Beavers's motions to dismiss be granted; (3) the court sua sponte dismiss Defendants Hoby James, Galveston County, and John Doe Officers 1–5 for failure to state a claim on which relief may be granted; and (4) Reardon's request for a TRO be denied.

## BACKGROUND

The live pleading in this case is Reardon's second amended complaint. *See* Dkt. 58. For purposes of the pending motions to dismiss, I accept Reardon's well-pleaded factual allegations as true. I also consider the five video recordings, a blood warrant and affidavit, and a drug toxicology report that the Galveston Defendants attach to their motion to dismiss.[1]

Reardon describes himself as a First Amendment auditor and citizen journalist who records public meetings, files public-records requests, and publishes his findings. On February 21, 2021, Beavers, then a Lafayette County, Mississippi Sheriff's Department deputy, stopped Reardon for an allegedly expired tag and improper equipment. *See id.* at 13. Beavers stated that she "detected the scent of marijuana emanating from [Reardon]'s vehicle" and "initiated a DUI investigation." Dkt. 58 at 13–14.

On November 24, 2021, Plaintiff was found guilty in Lafayette County Justice Court of DUI and related misdemeanor charges. On December 2, 2021, the justice court permitted Reardon's counsel, Mitchell Driskell, to withdraw. The Mississippi Court of Appeals recounts the following chain of events:

> On December 3, 2021, Reardon, appearing pro se, filed in justice court, as well as circuit court, a document entitled "Motion to Alter or Amend Judgment under M.R.C.P. 59(e) or in the Alternative to Vacate Judgment Entered Pursuant to M.R.C.P. 60(b)(l, 2, 3, 4, 6)." At the end of the twelve-page document, Reardon stated: "In the interest of Judicial Economy, please take Judicial Notice of this Motion to serve as Defendant's Notice of Intent to Appeal the Judgment/Order."
>
> On December 8, 2021, the justice court denied Reardon's motion. . . . The justice court made no mention of Reardon's notice of intent to appeal or that it should be filed in circuit court rather than in justice court. On December 27, 2021, Reardon, appearing pro se, filed in justice court a document entitled "Formal Notice of

---

[1] Because these documents are referred to in Reardon's complaint and central to his claims, I may consider them without converting the pending motions to dismiss into motions for summary judgment. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

Defendant's Intent to Appeal De Novo" in which he requested an appeal and reconsideration and dismissal of his charges. Reardon explained in a later motion that "in an effort to play things safe," he also tried to file a copy of this same notice in the circuit court, but a clerk told him that his indigent status "was being revoked for other matters" and that it would cost him approximately $150 to file his notice. Reardon also stated that his notice of appeal was refused by the circuit clerk's office on December 27, 2021. Reardon did not file the notice of appeal in circuit court at that time.

In 2022, Reardon began filing documents related to his appeal in circuit court. On January 7, 2022, Reardon filed an affidavit of poverty and a motion to hear his December 3, 2021 motion, which he claimed had remained "unanswered." He also filed a petition to appoint counsel.

In April 2022, the circuit court held a hearing on Reardon's pending motions. Reardon mentioned several times that he attempted to file his notice of appeal in circuit court as well as justice court "so that all bases were covered," but he testified a court clerk told him that nothing else could be filed in this matter until the other open matters in his case were heard. Reardon initially appeared pro se, but midway through the hearing, he requested that his former public defender, Driskell, who happened to be in the courtroom, be appointed counsel again in this matter because "[i]t's been a lot to keep up with." The circuit court agreed, finding statutory law required the court to appoint Reardon counsel. Regarding Reardon's appeal, the parties and circuit court acknowledged that the justice court had never ruled on Reardon's December 27, 2021 motion to reconsider; therefore, there was no final judgment from which to appeal. The parties agreed, however, that Reardon would withdraw that motion from justice court so he could proceed in circuit court. The circuit court found Reardon's December 3 motion to alter or amend the judgment was denied by the justice court and was not properly before the court. At the hearing, the circuit court declined to rule on whether Reardon had properly perfected an appeal but did not overrule the justice court's decision finding Reardon indigent.

Dkt. 58-4 at 3–6.

On April 6, 2022, Plaintiff filed a federal civil rights action in the Northern District of Mississippi. *See Reardon v. Mississippi*, No. 3:22-cv-050 (N.D. Miss.).

"On April 18, 2022, Driskell, on behalf of Reardon, filed a corrected notice of appeal and demand for a jury trial . . . , noting that the justice court found

Reardon could proceed in forma pauperis; thus, no cost or appearance bonds were required." Dkt. 58-4 at 6 (cleaned up).

On May 20, 2022, the Lafayette County Attorney, Bela Chain, "filed a response arguing that both requests were untimely and unperfected." *Id.* "For the next two years, the circuit court docket shows that no action was taken on [Reardon's] appeal." *Id.*

On June 28, 2022, Reardon was arrested on an aggravated stalking charge as he entered the Lafayette County Chancery Court for a scheduled child-custody hearing. *See* Dkt. 58 at 16. On September 30, 2022, Reardon pleaded guilty to aggravated stalking. *See id.* at 17. "As a condition of that plea, [Reardon] received five years suspended on unsupervised probation and was banished from Lafayette County, Mississippi for five years, with forty-five days to vacate the county." *Id.* at 18. Thus, Reardon had until Monday, November 14, 2022, to leave Lafayette County.

At a November 3, 2022 revocation hearing, Reardon "was found to have violated his banishment conditions and sentenced to one year in Mississippi state prison." *Id.* at 21. Reardon alleges that his suspended sentence was revoked due entirely to false testimony by Beavers.[2] *See id.*

On June 28, 2023, Reardon's civil rights action in the Northern District of Mississippi was dismissed and the case was closed. *See Reardon v. Lafayette County*, No. 3:22-cv-50, 2023 WL 4241668, at *14 (N.D. Miss. June 28, 2023).

Reardon was released from prison on August 1, 2023. *See* Dkt. 58 at 22. Upon his release, he published a video concerning Beavers's allegedly false November 2022 testimony. *See id.* "Approximately 40,000 members of the public viewed the publication within one week." *Id.*

---

[2] Taking Reardon's allegations as true, it is unclear to me how Reardon's sentence could have been revoked on November 3, 2022, for violating a banishment condition that did not take effect until November 14, 2022.

On August 10, 2023, Reardon left Mississippi for Galveston, Texas. *See id.* At approximately 2:00 a.m. on August 11, 2023, Reardon was stopped in Texas by Defendant William Osteen, a Galveston Police Department officer, and arrested for driving while intoxicated after refusing a field sobriety test. *See* Dkt. 68-6 at 3.

Reardon alleges that his "[f]riends and associates were physically present" when he was arrested and were "willing to take immediate custody of [his] vehicle." Dkt. 58 at 29. Reardon claims that he "explicitly communicated this desire," but that the officers on scene "caused the vehicle to be towed." *Id.*

At 2:41 a.m. on August 11, 2023, while Reardon was in police custody, Defendant Hoby James, a former Lafayette County Sheriff's deputy, called Galveston Police Department dispatch and asked to speak with "the officer that arrested [Reardon]." *Id.* at 23. Reardon alleges that James told Galveston police that Reardon had a final DUI conviction in Mississippi. *See id.* At 2:49 a.m., Osteen obtained a search warrant for Reardon's blood, which Osteen repeatedly refers to as a "blood warrant." *See* Dkt. 68-6. In an affidavit submitted with his application for the blood warrant, Osteen detailed why he believed there was probable cause:

> On Friday August 11th, 2023, at approximately 0152hours, [Osteen] was called by Officer L. Murph to make his traffic stop location in the 4300 block of Ave J. Upon making location, Officer Murph advised [Osteen] that he observed a black 2013 Chevrolet Equinox bearing MSLP: LXE1450 traveling eastbound in the 4700 block of Ave J at approximately 47 mph in a 35-mph speed zone. Officer Murph advised [Osteen] that he observed the Equinox Fail to Maintain a Single Marked Lane multiple times. Officer Murph advised [Osteen] that he observed the Equinox Fail to signal when conducting a Lane Change. Officer Murph advised [Osteen] that he observed the Equinox to have his license plate obstructed. Officer Murph advised [Osteen] that he conducted a traffic stop in the 4300 block of Ave J.
>
> Upon making contact with [Reardon], . . . [Osteen] smelled an odor of an unknown alcoholic beverage emitting from the vehicle. [Osteen] observed [Reardon] to have watery, glossy eyes. [Osteen] . . . asked [Reardon] if he had anything to drink tonight to which he advised that he hasn't had a drink in 3 years. [Osteen] asked [Reardon] to step out of the vehicle. [Osteen] asked [Reardon] if he would consent to Standardized Field Sobriety Test (SFST's) to which

he refused consent. Based on the above facts, [Osteen] placed [Reardon] under arrest for Driving While Intoxicated. [Osteen] read [Reardon] a copy of the DIC24 Statutory Warning using the LEADRS recording and requested a specimen of his blood to which he refused.

*Id.* at 2. At 4:04 a.m. on August 11, 2023, Beavers also called the Galveston Police Department to report that Reardon had a final DUI conviction in Mississippi. *See* Dkt. 58 at 24.

"On September 6, 2023, . . . the Texas Department of Public Safety Houston Crime Laboratory completed [part of] its analysis of [Reardon]'s blood" and reported "no alcohol detected." *Id.* at 26; *see also* Dkt. 59 at 1. This laboratory report was transmitted to Osteen. *See* Dkt. 59 at 1. The report shows that Reardon's blood was "forwarded to the DPS Austin Crime Laboratory" for further drug analysis. *Id.*

"On December 7, 2023, the Galveston grand jury indicted Plaintiff for Driving While Intoxicated Third or More Offenses—a felony." Dkt. 58 at 26. Reardon alleges that the laboratory report showing no alcohol in his blood was withheld from the grand jury. *See id.* Reardon remained in pretrial detention in Texas for approximately 11 months. *See id.* at 27. During this time, Reardon's vehicle, which had been impounded during his arrest, was sold at public auction. *See id.* at 29–30.

On February 1, 2024, the Texas Department of Public Safety completed the remaining analysis of Reardon's blood. *See* Dkt. 68-7. According to that report, there was .13 milligrams per liter of methamphetamine in Reardon's blood when it was drawn on August 11, 2023. *See id.* at 3.

On March 25, 2024, Busby, the Lafayette County Circuit Clerk, created the following letter:

RE: CAUSE NOS: 9290609, 9290610, 9291197, 9291198, 9291202

To Whom It May Concern:

To the best of my knowledge, there has not been a properly filed appeal from any conviction pending in the Lafayette County Circuit Court.

_____
Jeff Busby
Lafayette County Circuit Clerk
1 Courthouse Square, Suite 101
Oxford, MS 38655

Dkt. 58-2 at 1. That same day, Steven Jubera, then an Assistant District Attorney for Lafayette County, emailed Busby's letter and several other documents related to Reardon's criminal prosecutions in Lafayette County to Galveston County Assistant District Attorney Nasharria Serinash. *See* Dkt. 73-1 at 2. In his email, Jubera explained:

> Mr Reardon filed a motion on our civil docket that is attached, pro se, which seems to be something like an appeal. When a lower court convicts a defendant has an absolute right to appeal. That appeal is filed on the criminal docket, not the civil one.
>
> That is not a proper appeal from any judgement in lower court in particular the DUI in question. I have a letter from our clerk attached stating that there has not been a properly filed appeal from any conviction pending in the circuit court.

*Id.* Jubera attached Chain's May 20, 2022 response to his email. *See id.* at 16–17. Jubera did not attach or mention, however, Driskell's April 18, 2022 corrected notice of appeal.

On May 24, 2024, the State of Texas dismissed Reardon's felony DWI charge and recharged the offense as a misdemeanor DWI. *See* Dkt. 58 at 30. Before a trial could be held on the misdemeanor charge, however, Reardon was extradited to Mississippi for probation-revocation proceedings. *See id.* at 30–31.

On July 18, 2024, Reardon appeared in Lafayette County Circuit Court before Judge Grady Tollison for a revocation hearing. During the hearing, a district

attorney's office investigator for Lafayette County testified that the Texas felony DWI charge had been dismissed, and the dismissal order was admitted into evidence. *See* Dkt. 58-7 at 16. Osteen then testified remotely by Zoom from Texas. The hearing transcript shows that Osteen testified that "[t]here was alcohol detected" in Reardon's blood. *Id.* at 27. Osteen also testified that "besides alcohol [there] was methamphetamine and the results were .13 milligrams per liter." *Id.* Ultimately, Judge Tollison found Reardon to have violated the terms and conditions of his unsupervised probation "[b]ased on the testimony presented to the Court and the evidence particularly Exhibit 3 showing .13 level methamphetamine in [his] system and being charged with a felony DUI." *Id.* at 43. Judge Tollison did not mention alcohol when stating his findings. Judge Tollison sentenced Reardon to two years in prison and two years of post-release supervision. *See id.* at 44.

On November 26, 2024, the MacArthur Justice Center filed a petition for post-conviction relief on Reardon's behalf in the Lafayette County Circuit Court, asserting that a Texas misdemeanor DWI would be, at most, a technical violation of probation and that the maximum term of imprisonment for a second technical violation was only 120 days, not two years. *See* Dkt. 58 at 33–34; *see also* Miss. Code Ann. § 47-7-37 ("If the court revokes probation for one or more technical violations, the court shall impose a period of imprisonment to be served in either a technical violation center or a restitution center not to exceed . . . one hundred twenty (120) days for the second revocation.").

On January 21, 2025, the Lafayette County Circuit Court granted Reardon's petition for post-conviction relief, vacated his two-year sentence, re-sentenced him to 120 days with credit for time served, ordered his immediate release, and reinstated unsupervised probation. *See* Dkt. 58 at 34.

On June 30, 2025, Reardon instituted this lawsuit against Osteen, Doraty, James, Beavers, Busby, the City of Galveston, and John Doe officers. Reardon also named as defendants UTMB and Jacob McDougle—the UTMB nurse who drew

8

Reardon's blood on August 11, 2023. Reardon asserts claims under 42 U.S.C. §§ 1983 and 1985 (against all defendants), Title II of the Americans with Disabilities Act ("ADA") (against UTMB), and Texas common law (against all defendants except UTMB). UTMB, the Galveston Defendants, and Busby appeared and filed motions to dismiss. *See* Dkts. 26, 40, 46.

"In late 2025, . . . the Galveston County District Attorney moved to dismiss Reardon's remaining misdemeanor DWI charge." Dkt. 58 at 35.

On February 24, 2026, the Mississippi Court of Appeals held that Reardon "was improperly denied continuous representation of counsel, . . . which . . . resulted in the dismissal of his appeal" of his November 2021 DUI conviction. Dkt. 58-4 at 12. The court of appeals reversed the circuit court's dismissal of Reardon's misdemeanor appeal and remanded his case to the circuit court for proceedings consistent with the court of appeals' decision. *See id.*

On March 23, 2026, Reardon filed an emergency motion seeking electronic filing access, an extension of time to respond to all pending motions to dismiss, for leave to file an amended complaint, to strike or deny as untimely Busby's motion to dismiss for lack of personal jurisdiction, and to extend time for service on James, Beavers, and McDougle. *See* Dkt. 52.

On March 30, 2026, this case was referred to me for all pretrial purposes. *See* Dkt. 55.

On April 1, 2026, I denied Reardon's request for electronic filing; granted him leave to file an amended complaint; gave him until April 30, 2026, to serve James, Beavers, and McDougle; and denied all pending motions to dismiss and other requested relief as moot. *See* Dkt. 56 at 3.

On April 23, 2026, Reardon filed his Second Amended Complaint. *See* Dkt. 58. On May 13, 2026, Busby renewed his motion to dismiss for lack of personal jurisdiction. *See* Dkt. 65. On May 14, 2026, UTMB and the Galveston Defendants renewed their motions to dismiss, respectively. *See* Dkts. 67, 68. Beavers also filed a motion to dismiss on May 14, 2026. *See* Dkt. 69.

On June 3, 2026, Reardon voluntarily dismissed all his claims against McDougle and UTMB. *See* Dkt. 75. The dismissal of Reardon's claims against McDougle and UTMB means that there are no longer any Title II claims at issue in this case.

On June 26, 2026, Reardon filed an emergency motion in this case for a TRO seeking, among other things, an injunction against non-party Marty's City Auto from auctioning, selling, or destroying Reardon's vehicle. *See* Dkt. 84-1 at 1. That same day, Reardon also filed a motion for leave to file a supplemental complaint, *see* Dkt. 85, and a motion to expedite hearing and shorten Defendants' response time to Reardon's emergency motion for a TRO. *See* Dkt. 86.

I turn my attention first to the motions to dismiss.

### BUSBY'S RULE 12(b)(2) MOTION TO DISMISS

Rule 12(b)(2) allows a party to challenge the district court's exercise of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). The United States Supreme Court has recognized two types of personal jurisdiction: general jurisdiction[3] and specific jurisdiction. *See Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 262 (2017). Only specific jurisdiction is at issue in this case. Specific jurisdiction demands a connection between the incident in question and the forum state. *See Walden v. Fiore*, 571 U.S. 277, 283–84 (2014). This inquiry is fact intensive, and its "touchstone is whether the defendant's conduct shows that it reasonably anticipates being haled into" a Texas court. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (quotation omitted). Defendants "will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 871–72 (5th Cir. 1999) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

---

[3] "Because [ABFM] is neither incorporated in Texas nor has its principal place of business there, there is no general jurisdiction over [ABFM] in Texas." *Ethridge v. Samsung SDI Co.*, 137 F.4th 309, 314 (5th Cir. 2025).

"The reach of [personal] jurisdiction is delimited by: (1) the state's long-arm statute; and (2) the Due Process Clause of the Fourteenth Amendment to the federal Constitution." *Wilson v. Belin*, 20 F.3d 644, 646–47 (5th Cir. 1994). "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry reduces to only the federal due process analysis." *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 539 (5th Cir. 2019). Three conditions must be met to establish specific personal jurisdiction over Busby: (1) Busby must have "purposefully availed [himself] of the privilege of conducting activities in [Texas]"; (2) Reardon's claims must arise out of or relate to Busby's purposeful contacts with Texas; and (3) "the exercise of personal jurisdiction must be fair and reasonable." *Ethridge*, 137 F.4th at 314.

Reardon bears the burden on the first two conditions. *See Herman v. Cataphora, Inc.*, 730 F.3d 460, 464 (5th Cir. 2013). "To determine whether the plaintiff has met this burden, the court can consider the assertions in the plaintiff's complaint, as well as the contents of the record at the time of the motion." *Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 336 (5th Cir. 2020) (quotation omitted). "Where, as here, the court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, that burden requires only that [Reardon] make a *prima facie* showing." *Herman*, 730 F.3d at 464. In determining whether Busby has sufficient minimum contacts with Texas, I "construe all disputed facts in [Reardon's] favor and consider them along with the undisputed facts." *Walk Haydel & Assocs. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008).

Busby attached to his motion an affidavit stating that he never "personally responded to a request from the Galveston County District Attorney's Office for a status update on Matthew Reardon's Mississippi DUI conviction in the Lafayette Circuit Court." Dkt. 65-1 at 1. Busby also attached an affidavit from Lafayette County Assistant District Attorney, Steven Jubera. *See* Dkt 73-2. Jubera's affidavit conclusively establishes that Busby himself sent nothing to Texas. Rather, Jubera

11

requested that Busby prepare a statement regarding Reardon's prior convictions and the status of any appeals. *See id.* at 1. Busby, however, did not send that statement to anyone in Texas—he sent it to Jubera. It was Jubera who sent Busby's March 25, 2024 letter to ADA Serinash in Texas. *See id.* Reardon does not allege that Busby has any other contacts with Texas beyond the March 25, 2024 letter. Because the record shows that Busby, a Mississippi citizen, did not send his March 25, 2024 letter to Texas, Busby has no contacts with Texas that would confer specific personal jurisdiction on him. Accordingly, Busby's motion to dismiss for lack of personal jurisdiction should be granted.

## RULE 12(b)(6) MOTIONS TO DISMISS

### A.   LEGAL STANDARD

A defendant may move to dismiss a complaint when a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). Conversely, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (cleaned up).

When evaluating a Rule 12(b)(6) motion, I accept "all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *Cummings v. Premier Rehab Keller, P.L.L.C.*, 948 F.3d 673, 675 (5th Cir. 2020) (quotation omitted). I "do not, however, accept as true legal conclusions, conclusory

statements, or naked assertions devoid of further factual enhancement." *Benfield v. Magee*, 945 F.3d 333, 336–37 (5th Cir. 2019) (cleaned up). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The Fifth Circuit "hold[s] pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints, but pro se plaintiffs must still plead factual allegations that raise the right to relief above the speculative level." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016); *see also Twombly*, 550 U.S. at 555.

## B.   ANALYSIS

Because this is federal court, I will evaluate Reardon's federal claims before determining whether this court should exercise supplemental jurisdiction over his state law claims.

Reardon asserts numerous constitutional claims against Defendants pursuant to 42 U.S.C. § 1983. "Section 1983 provides a remedy against any person who, under color of state law, deprives another of rights protected by the Constitution." *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992) (quotation omitted). "To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (quotations omitted). It is undisputed that Osteen, Doraty, James, Beavers, and Busby (the "Individual Defendants") were all acting under color of state law at the time of their actions that Reardon says give rise to his claims. Thus, concerning Reardon's § 1983 claims, the only question is whether Reardon has plausibly stated that each of these defendants violated one of his constitutional rights.

### 1.   *Due Process—Malicious Prosecution, Suppression of Evidence, Fabrication of Evidence, Presentation of False Testimony*

Reardon alleges that, in violation of his Fourth and Fourteenth Amendment rights to due process, the Individual Defendants "acted individually and in concert

under color of state law to initiate and continue felony criminal proceedings against [him] without probable cause, culminating in the December 7, 2023 grand jury indictment for Driving While Intoxicated Third or More Offenses." Dkt. 58 at 39. Reardon alleges that Osteen and Doraty further violated his due process rights when they "initiated and maintained a recharged misdemeanor prosecution against [Reardon] without probable cause." *Id.* at 41. Reardon also alleges that Osteen further violated his due process rights by the "deliberate withholding of material exculpatory evidence and the affirmative presentation of false testimony to the grand jury and to the Mississippi revocation court." *Id.* at 44. Although Reardon styles each of these allegations differently, they are all, essentially, constitutional malicious prosecution claims.

> To state a constitutional malicious prosecution claim, Reardon must allege:

> (1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages.

*Espinal v. City of Houston*, 96 F.4th 741, 748 (5th Cir. 2024).

### a.    James and Beavers

Reardon believes that James and Beavers wronged him by falsely representing to Texas authorities that he had a final DUI conviction in Mississippi. Even if I assume that all other elements of a malicious prosecution claim are met, Reardon's malicious prosecution claims against James and Beavers fail because Reardon has not pleaded legal causation (element two) or the absence of probable cause (element four).

"In general, if facts supporting an arrest are placed before an independent intermediary such as a . . . grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." *Loftin v. City of Prentiss*, 33 F.4th 774, 782 (5th Cir. 2022) (quotation omitted). Reardon admits

that a Galveston grand jury indicted him. Thus, the grand jury is an independent intermediary that breaks the chain of legal causation.

Reardon contends that the independent-intermediary doctrine does not apply because the Mississippi Court of Appeals' February 24, 2026 opinion demonstrates that the appeal of his Mississippi DUI conviction was not final and therefore he should not have been charged with a felony DWI in Texas.[4] This argument misses the mark. Lafayette County's position for over a year before Reardon was arrested in Galveston was that Reardon's appeal was "untimely and unperfected." Dkt. 58-4 at 6. Thus, James and Beavers—and, in turn, the Galveston grand jury—all had probable cause to believe that Reardon's nearly two-year-old (as of the date of his Galveston arrest) Mississippi DUI conviction was final. Presenting a plausible version of disputed facts to the independent intermediary does not taint the resulting indictment. *See Buehler v. Dear*, 27 F.4th 969, 992 (5th Cir. 2022) ("And an affiant's presentation of one plausible version of disputed facts to the magistrate judge does not taint the resulting warrant." (cleaned up)). The whole purpose of the Mississippi Court of Appeals' opinion was to settle the question of whether Reardon's Mississippi DUI conviction appeal was "untimely

---

[4] I have already established that this court cannot exercise specific personal jurisdiction over Busby. But I want to note that, even if this court could exercise specific personal jurisdiction over Busby, Reardon would still fail to state a claim against Busby. Reardon contends that "the independent intermediary doctrine does not break causation" because "the Galveston grand jury and Texas prosecutors acted on Busby's false certification." Dkt. 58 at 39–40. Under Reardon's own factual chronology, this simply cannot be true. The Galveston grand jury indicted Reardon on December 7, 2023. Busby's letter was not written until March 25, 2024—more than three months *later*. Accordingly, Busby's letter cannot have caused the Galveston grand jury to indict Reardon. Nor could Busby's March 25, 2024 letter have caused the proceedings stemming from that indictment to continue. Busby's letter stated that "there has not been a *properly* filed appeal." Dkt. 58-2 at 1 (emphasis added). That statement was consistent with Lafayette County's position, which since May 20, 2022, had been that Reardon's "requests [to appeal] were untimely and unperfected." Dkt. 58-4 at 6. A mere two months after Busby's letter, "[o]n May 24, 2024, the State of Texas *dismissed* the felony DWI charge in its entirety, stating explicitly it 'cannot prove up jurisdictional enhancements.'" Dkt. 58 at 30 (emphasis added). Thus, none of Busby's actions legally caused the commencement or continuation of Galveston's criminal proceedings against Reardon for felony DWI.

and not perfected." Dkt. 58-4 at 1. Yes, the Mississippi Court of Appeals reversed the dismissal of Reardon's appeal. But until that opinion was issued, Reardon's conviction and Lafayette County's position regarding what it believed to be an untimely and unperfected appeal constituted probable cause to believe that there were predicate offenses with which to enhance Reardon's DWI charge.

Regarding charging a defendant with an enhanced offense, like DWI (Third Offense), the Texas Court of Criminal Appeals has said: "It [is] sufficient to charge that he had been convicted of an offense of like character prior to the commission of the primary offense charged. A conviction means a final conviction. *If the conviction was not final, it could be shown as a matter of defense." Broughton v. State*, 188 S.W.2d 393, 395 (1945) (emphasis added). In other words, the court contemplated that a defendant may be indicted on an enhanced offense based on a conviction that is later shown not to be final. All that matters at the grand-jury stage is that Reardon "had been convicted of an offense of like character prior to the commission of the primary offense charged." *Id.* It is undisputed that Reardon had been convicted of two DUIs prior to being arrested for DWI in Galveston. That constitutes probable cause.

Because Reardon cannot show legal causation or a lack of probable cause, his malicious prosecution claims against James, Beavers, and Busby must be dismissed for failure to state a claim upon which relief can be granted.

### b. Doraty

Reardon does not allege any specific conduct by Doraty. Reardon's only allegations against Doraty are that he: "participated in and supervised the August 11, 2023 arrest and warrant application process, and bears supervisory responsibility for the constitutional violations alleged"; "caused [Reardon's] vehicle to be towed from what [Reardon] asserts was private property over his explicit objection and notwithstanding the presence of willing private custodians"; "initiate[d] and continue[d] felony criminal proceedings against [Reardon] without probable cause"; "initiated and maintained a recharged misdemeanor

16

DWI prosecution against [Reardon] without probable cause"; and participated in a conspiracy to deprive Reardon of his constitutional rights. Dkt. 58 at 8, 29, 39, 41. I will discuss Reardon's vehicle being towed and sold below in the section concerning First Amendment retaliation. As to malicious prosecution, however, none of these conclusory allegations put Doraty on notice of what he did, and none of them allege conduct that would give rise to a plausible malicious prosecution claim. Accordingly, Reardon's malicious prosecution claims against Doraty must be dismissed for failure to state a claim upon which relief can be granted.

### c.    Osteen

Reardon alleges that Osteen "manufactured probable cause by testifying falsely before the Galveston grand jury that [Reardon]'s blood tests were positive for alcohol, despite having received the zero blood-alcohol toxicology report from the Texas Department of Public Safety on September 6, 2023." Dkt. 58 at 40.

To the extent that Reardon bases his malicious prosecution claim on anything that Osteen said to the Galveston grand jury, that claim must fail. The United States Supreme Court has held:

> a grand jury witness has absolute immunity from any § 1983 claim based on the witness' testimony. In addition, . . . this rule may not be circumvented by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution.

*Rehberg v. Paulk*, 566 U.S. 356, 369 (2012). Thus, Reardon's malicious prosecution claim can be based only on Osteen's false statements in *documents* that were presented to the Galveston grand jury, like his blood warrant affidavit. It cannot be based on Osteen's testimony before the grand jury.

The false statements at issue concern whether Reardon's pupils were dilated or pinpoint when Osteen arrested Reardon, and whether Osteen smelled alcohol coming from Reardon's breath or only from his car. On the blood warrant affidavit, Osteen checked the box for "Dilated" to describe Reardon's eyes. *See* Dkt. 68-6 at 3. Osteen also checked the box for "Moderate" to indicate the odor of alcohol on

17

Reardon's breath. *See id.* Before Judge Tollison, however, Osteen testified that he "could not smell alcohol on [Reardon]'s breath and described [Reardon]'s pupils as 'pinpoint' rather than dilated." Dkt. 58-7 at 24. These statements are admittedly inconsistent.[5] I will assume, for the sake of argument, that these inconsistent statements rise to the level of deliberate falsehoods.

As to the first element of a malicious prosecution claim, Reardon has alleged that the Galveston grand jury continued the criminal proceeding against him by indicting him on a felony DWI charge. Taking Reardon's allegations as true, it is plausible that Osteen legally caused—through his false statements in his blood warrant affidavit—the Galveston grand jury to indict Reardon on a felony DWI, which would satisfy the second element. Reardon's felony DWI charge was dismissed on May 24, 2024, which is "bona fide termination" in Reardon's favor—satisfying the third element. *Espinal*, 96 F.4th at 748. Unfortunately, Reardon's malicious prosecution claim against Osteen fails on the fourth and fifth elements: the absence of probable cause for the Galveston grand jury proceeding and malice, respectively.

I hate to use a double negative, but Reardon fails to allege the absence of probable cause for his DWI arrest. Reardon alleges that "[p]robable cause for the felony enhancement never existed," Dkt. 58 at 39, but he never alleges that probable cause for a DWI never existed. As established above, Reardon's previous convictions and debates about whether he had timely perfected an appeal meant that probable cause existed for the felony enhancement. Probable cause also existed for the DWI arrest itself, and Reardon never alleges otherwise—in more than a conclusory fashion. The blood warrant affidavit shows that Osteen also found probable cause because Reardon failed to maintain a single marked lane,

---

[5] The boxes that Osteen checked on the blood warrant affidavit are not a model of clarity. For example, Osteen checked boxes indicating that Reardon was both cooperative and uncooperative, in addition to indifferent. *See* Dkt. 68-6 at 3. Osteen's written statements and oral testimony—as opposed to his checkmarks about his observations—have never been inconsistent.

failed to signal when conducting a lane change, and refused a field sobriety test.[6] "A person's refusal to participate in field sobriety testing is a factor that may be considered in the totality of the circumstances when determining whether probable cause exists." *Tex. Dep't of Pub. Safety v. Castro*, 406 S.W.3d 782, 788 (Tex. App.—El Paso 2013, no pet.).

The video footage of Reardon's arrest shows him refusing a field sobriety test but enthusiastically offering to submit to a breathalyzer, which can only detect the presence of alcohol.[7] *See* Dkt. 68 at 4. As Osteen has explained, Reardon's insistence on taking a breathalyzer made Osteen suspicious that Reardon was under the influence of something other than alcohol. *See* Dkt. 58-7 at 24. "Probable cause is a state of mind in which the facts are regarded from the point of view of the prosecuting party. The question is not what the actual facts were, but what the prosecuting party honestly believed them to be." *Zess v. Funke*, 956 S.W.2d 92, 94 (Tex. App.—San Antonio 1997, no writ) (cleaned up). Reardon's failure to adhere to traffic rules, his refusal to take a field sobriety test, and his insistence on taking a test that only detects alcohol are facts that, in totality, amount to probable cause. Because probable cause existed for the Galveston grand jury proceeding, Reardon cannot state a malicious prosecution claim against Osteen.

The presence of probable cause means that Reardon also cannot plausibly suggest malice. "Malice" is "often defined in this context as *without probable cause* and for a purpose other than bringing the defendant to justice." *Armstrong*, 60 F.4th at 278. Even if I assume that Osteen acted for a purpose other than bringing Reardon to justice, the fact that Osteen had probable cause for Reardon's DWI arrest makes it impossible for Osteen to have acted with malice.

---

[6] Reardon references this affidavit in his complaint, and it is central to his claims. *See* Dkt. 58 at 7, 24, 26, 32, 35, 42, 48, 50. Accordingly, I may consider this affidavit without converting Galveston Defendants' motion to dismiss into a motion for summary judgment. *See Collins*, 224 F.3d at 498.

[7] Reardon references these videos in his complaint, and they are central to his claims. *See* Dkt. 58 at 23, 30. Accordingly, I may consider the footage from Osteen's body camera. *See supra.*

I take no pleasure in this result. The record shows that Osteen lied to Judge Tollison. That is disturbing. But the elements of a malicious prosecution claim are clear, and Reardon's claim fails as to the fourth and fifth elements.

### 2. *Unlawful Search*

Reardon claims that his right against unreasonable search was violated because "[t]he blood draw warrant was procured through Osteen's materially false statements regarding prior final convictions and fabricated contemporaneous intoxication observations that his own subsequent testimony directly contradicted." Dkt. 58 at 43. Again, the false statements at issue concern whether Reardon's pupils were dilated or pinpoint, and whether Osteen smelled alcohol coming from Reardon's breath or only from his car. I assume, for the sake of argument, that these inconsistent statements rise to the level of deliberate falsehoods. Reardon argues that the blood warrant is "void" pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), because it was based on a "deliberate material falsehood." Dkt. 58 at 43. This misstates *Franks*'s holding.

To start, *Franks* merely entitles a warrant's challenger to an evidentiary hearing. *Franks* does not mandate the automatic disregard of a warrant and its fruits simply because the challenger makes a preliminary showing of a deliberate falsehood. Second, under *Franks*, "if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." 438 U.S. at 171–72. In this case, Reardon's unlawful search claim fails for the same reason as Reardon's malicious prosecution claim: for the reasons discussed in the preceding section, there was probable cause for Reardon's DWI arrest even without Osteen's false statements.

Osteen has testified consistently that Reardon was stopped because Reardon failed to maintain a single marked lane, that Osteen smelled the odor of alcohol *from the vehicle* that Reardon was driving, that Reardon's eyes were watery, that Reardon refused a field sobriety test, and that Osteen suspected Reardon to be

20

under the influence of something other than alcohol. *Compare* Dkt. 58-7 at 22–24, *with* Dkt. 68-6 at 2–3. Setting Osteen's false statements aside, there is still more than enough probable cause for the blood warrant that was issued. *Wood v. Bexar County*, 147 F.4th 534, 548 (5th Cir. 2025) ("We have also determined—without considering [the false statements]—that Deputy Gereb had probable cause to arrest Wood for driving while intoxicated. . . . So even if those were false statements, they were not necessary to the finding of probable cause."). Thus, Reardon cannot state an unlawful search claim based on the blood warrant.

### 3.    *Unlawful Seizure*

Reardon contends that "[t]he impoundment of [his] vehicle from private property, over his explicit objection, despite the presence of willing private custodians who would have eliminated any community caretaking rationale, constituted an unreasonable seizure under the Fourth Amendment." Dkt. 58 at 54. "Impounding a vehicle qualifies as a seizure subject to a Fourth Amendment analysis." *Degenhardt v. Bintliff*, 117 F.4th 747, 756 (5th Cir. 2024). Galveston Defendants respond that Reardon cannot state a constitutional violation for unreasonable seizure due to the community caretaking exception, but even if he could, Osteen and Doraty are entitled to qualified immunity, and Reardon cannot make out a claim for municipal liability against the City.

### a.    **Reardon states a claim for unreasonable seizure**

To support their contention that impounding Reardon's vehicle was reasonable, Galveston Defendants cite the seminal Supreme Court decision regarding the community caretaking exception to warrantless searches and seizures: *South Dakota v. Opperman*, 428 U.S. 364 (1976). "In *Opperman,* the Court noted that impoundments by the police may be in furtherance of 'public safety' or 'community caretaking functions,' such as removing 'disabled or damaged vehicles,' and 'automobiles which violate parking ordinances, and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic.'" *United States v. McKinnon*, 681 F.3d 203, 208 (5th Cir. 2012) (quoting

428 U.S. at 368–369). "The Court further noted that the 'authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge.'" *McKinnon*, 681 F.3d at 208 (quoting *Opperman*, 428 U.S. at 369). But nothing in this case suggests that Reardon's vehicle was disabled, damaged, violating parking ordinances, impeding traffic, or threatening public safety. Without some explanation, it is unclear to me why the community caretaking exception would apply.

Galveston Defendants also assert that Reardon "had no driver's license, the vehicle did not have valid registration plates, and [Reardon] had driven the vehicle while under the influence of intoxicating substances." Dkt. 68 at 28–29. Only one of these statements, all of which are unsupported by the pleadings and exhibits, is even relevant to whether the impoundment of Reardon's vehicle was reasonable. Whether *Reardon* had a driver's license and whether *Reardon* had driven under the influence have nothing to do with whether the other private citizens present during Reardon's arrest could have lawfully taken possession of the vehicle, as Reardon requested, instead of it being impounded. This much is true: if the vehicle did not have valid registration plates, then it was indeed reasonable to impound the vehicle because it "could not lawfully be driven away from the scene." *United States v. McKinnon*, 681 F.3d 203, 209 (5th Cir. 2012). But Reardon does not admit to having an expired registration, and there is no indication from the many exhibits attached to the pleadings and the motion to dismiss briefing that Reardon's registration was expired. Because it was unreasonable to impound Reardon's vehicle, Reardon has stated a constitutional claim for unreasonable seizure. That does not, however, end the inquiry.

### b.   Doraty and Osteen are entitled to qualified immunity

Government officials sued in their individual capacity under § 1983 are entitled to qualified immunity, which is "an *immunity from suit* rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). "[T]he qualified-immunity inquiry has two prongs: (1) whether an official's conduct violated a

constitutional right of the plaintiff, and (2) whether that right was clearly established at the time of the violation." *Rockwell v. Brown*, 664 F.3d 985, 990–91 (5th Cir. 2011).

At the motion to dismiss stage, "a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Kelson v. Clark*, 1 F.4th 411, 416 (5th Cir. 2021) (cleaned up). "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). "Again, both prongs must be satisfied, and courts may choose which prong to consider first." *Bernabe v. Rosenbaum*, No. 21-10396, 2023 WL 181099, at *1 (5th Cir. Jan. 13, 2023); *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (Courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

"The second prong of the qualified-immunity analysis asks whether the right in question was clearly established at the time of the violation." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quotation omitted). While Supreme Court precedent "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (cleaned up). Existing precedent places statutory or constitutional questions beyond debate "*only* when [the district court] can 'identify a case where an [official] acting under similar circumstances was held to have violated'" a constitutional right. *Surratt v. McClarin*, 851 F.3d 389, 392 (5th Cir. 2017) (emphasis added) (cleaned up) (citing *Pauly*, 580 U.S. at 552). "It is the plaintiff's burden to find a case in his favor that

does not define the law at a 'high level of generality.'" *Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018) (quoting *Cass*, 814 F.3d at 732–33).

Here, Reardon fails to even address Doraty's and Osteen's assertion of qualified immunity as to the unreasonable seizure claim,[8] much less point the court to case law suggesting that the right to be free from vehicle impoundment after arrest when private citizens were available to take possession of the vehicle was a clearly-established right at the time that Reardon's vehicle was impounded. This is fatal to Reardon's unreasonable seizure claim against Doraty and Osteen. *See Degenhardt*, 117 F.4th at 757 (holding that officers were entitled to qualified immunity, despite finding that the impoundment of plaintiffs' vehicle was unreasonable, because plaintiffs "cite only to caselaw standing for the proposition that an unreasonable seizure is generally unlawful" and "[s]uch precedent is too general for purposes of qualified immunity"); *Chuttoo v. Horton*, 627 F. Supp. 3d 655, 676 (E.D. Tex. 2022) (granting judgment on the pleadings where the plaintiff "identifies no factually analogous precedent of the Supreme Court or the Fifth Circuit (or any other circuit) clearly establishing that any reasonable officer in [defendants'] shoes would have known" they were violating a clearly established right).

### c.    Reardon cannot state a *Monell* claim against the City or Galveston County

"In *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court held that Congress intended § 1983 to apply to local government entities as well as to persons." *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 452 (5th Cir. 1994) (cleaned up). The Fifth Circuit has explained the contours of *Monell* liability:

> Under the decisions of the Supreme Court and this court, municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of

---

[8] Reardon argues that "qualified immunity does not protect officers who fabricate evidence, commit perjury, and suppress exculpatory statements." Dkt. 74 at 19 (cleaned up). But Reardon does not mention his unreasonable seizure claim.

constitutional rights whose moving force is the policy or custom. *Monell* and later decisions reject municipal liability predicated on *respondeat superior*, because the text of section 1983 will not bear such a reading. Consequently, the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability. The three attribution principles identified here—a policymaker, an official policy and the "moving force" of the policy—are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself. Mistakes in analyzing section 1983 municipal liability cases frequently begin with a failure to separate the three attribution principles and to consider each in light of relevant case law.

*Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (cleaned up).

Official policy exists in two forms. "First, a plaintiff may point to a policy statement formally announced by an official policymaker." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168 (5th Cir. 2010). Second, an official policy may "arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (quoting *Piotrowski*, 237 F.3d at 579). "A policy or custom is official only 'when it results from the decision or acquiescence of the municipal officer or body with "final policymaking authority" over the subject matter of the offending policy.'" *Peterson*, 588 F.3d at 847 (quoting *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). "State law determines whether a particular individual is a county or municipality final decision maker with respect to a certain sphere of activity." *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996).

Proof of a custom or policy can be shown by "a pattern of unconstitutional conduct . . . on the part of municipal actors or employees," or where "a *final policymaker* took a single unconstitutional action." *Zarnow*, 614 F.3d at 169. "A customary policy consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's

knowledge and acceptance of the disputed conduct." *Id.* "Allegations [or proof] of an isolated incident are not sufficient to show the existence of a custom or policy." *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992). To plausibly "plead a practice so persistent and widespread as to practically have the force of law, [Lowry] must do more than describe the incident that gave rise to his injury." *Ratliff v. Aransas County*, 948 F.3d 281, 285 (5th Cir. 2020) (quotation omitted).

Reardon does not identify an official policymaker. Nor does he show that the circumstances under which his vehicle was impounded are part of a widespread practice so common and well-settled as to constitute a custom that represents municipal policy. Accordingly, Reardon cannot state a municipal liability claim against the City or Galveston County[9] for unreasonably seizing his vehicle.[10]

### 4.   *Excessive Force*

Reardon asserts that being "handcuffed behind his back, held face down on a hospital bed by approximately six law enforcement officers, [and] subjected to multiple forced and traumatic needle insertions over explicit objection[]constituted excessive force in the execution of a void warrant." Dkt. 58 at 43. Reardon claims that this "forced, traumatic blood extraction" caused him "severe physical injury" and "acute and chronic psychological harm." *Id.* at 58–59. Reardon does not specify the nature of his physical injury or psychological harm. He alleges injury labels, but pleads no facts describing the physical injury, treatment, symptoms, duration, or psychological harm sufficient to move the allegation that he was injured from conclusory to plausible.

"Although [the Fifth Circuit] no longer require[s] significant injury for excessive force claims, the injury must be more than *de minimis*." *Tarver v. City*

---

[9] It does not appear that Galveston County has ever been served in this case. Even so, Galveston County should be dismissed for the same reason that all the other defendants should be dismissed: failure to state a claim upon which relief can be granted.

[10] Reardon asserts other municipal liability claims, too, but a municipal liability claim rests upon a constitutional violation. *See Piotrowski*, 237 F.3d at 578. Because unreasonable seizure is the only constitutional violation that Reardon has alleged, it is the only constitutional claim for which I must discuss municipal liability.

*of Edna*, 410 F.3d 745, 752 (5th Cir. 2005) (cleaned up). "[H]andcuffing too tightly, without more, does not amount to excessive force." *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001). Nor is the mere extraction of blood itself a qualifying injury. *See Wood*, 147 F.4th at 550 (finding plaintiff's allegation that "officers at the jail 'resorted to medieval torture' to extract her blood" to be insufficient to establish a constitutional violation where the plaintiff "refused to voluntarily comply with the warrant" and "officers had to restrain her" to draw her blood). Finally, while "psychological injuries can serve as a basis for § 1983 liability," Reardon "does not demonstrate that he suffered psychological injury" from the handcuffing or the blood draw. *Tarver*, 410 F.3d at 752. Thus, Reardon's excessive force claim should be dismissed.

### 5.   *First Amendment Retaliation*

Reardon asserts a First Amendment retaliation claim against James, Beavers, and Osteen in connection with his August 10, 2023 arrest. As to James and Beavers, he alleges that they "initiated unsolicited interstate telephone contact with Galveston authorities and transmitted fabricated criminal history information that resulted in [Reardon's] felony detention." Dkt. 58 at 45. As to Osteen, Reardon alleges Osteen arrested Reardon solely because Osteen identified Reardon as "an auditor." *Id.* at 46.

To establish a First Amendment retaliation claim, Reardon must show that (1) he was "engaged in constitutionally protected activity"; (2) the defendant's actions caused him "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) the defendant's "adverse actions were substantially motivated against [Reardon's] exercise of constitutionally protected conduct." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). "[A] 'plaintiff pressing a retaliatory arrest claim' based on speech protected by the First Amendment generally 'must plead and prove the absence of probable cause for the arrest.'" *Grisham v. Valenciano*, 93 F.4th 903, 909 (5th Cir. 2024) (quoting *Nieves v. Bartlett*, 587 U.S. 391, 402 (2019)). As discussed above,

there was probable cause for Reardon's arrest, despite his assertions to the contrary.

There is one exception to the rule that a plaintiff must plead the absence of probable cause: "[A] plaintiff asserting a retaliatory arrest claim does ***not*** have to establish the absence of probable cause 'when [the] plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been.'" *Grisham*, 93 F.4th at 909 (emphasis added) (quoting *Nieves*, 587 U.S. at 407). This exception stems from the principle that "'where officers have probable cause to make arrests[,]' they may not disproportionately or unfairly 'exercise their discretion not to do so.'" *Grisham*, 93 F.4th at 910 (quoting *Nieves*, 587 U.S. at 406). Because the alleged retaliatory injury is Reardon's arrest, which he contends was unsupported by probable cause, *Nieves/Grisham* causation principles apply to all three defendants, even though James and Beavers did not personally arrest Reardon.

Reardon does not allege facts that plausibly suggest that individuals who failed to maintain a single marked lane, had glossy and watery eyes, and refused a field sobriety test would not also have been arrested for DWI, even if they were not engaged in protected speech. Because Reardon has "failed to plead comparator evidence," his First Amendment retaliation claim must be dismissed. *Degenhardt*, 117 F.4th at 759; *see also Frey v. Town of Jackson*, 41 F.4th 1223, 1238 (10th Cir. 2022) ("Because Plaintiff failed to allege . . . that Karnes usually does not detain similarly situated arrestees not engaged in the same speech, Plaintiff failed to state a valid retaliation claim against Karnes. The district court thus properly dismissed Plaintiff's retaliation claim.").

### 6.    *Denial of Access to Courts*

Reardon asserts a claim for denial of access to courts against all named Defendants:

> The [alleged civil rights] conspiracy caused the destruction of three specific, identified, nonfrivolous legal proceedings: (1) [Reardon's] $27.5 million federal civil rights action in the N.D. Miss., destroyed

when the manufactured prosecution incarcerated and banished him from the county containing the courthouse, while the defendants who ordered the prosecution were the same officials against whom the suit was pending; (2) [Reardon]'s child custody proceeding, permanently derailed when he was arrested while walking into the courthouse for that hearing; and (3) [Reardon's] Mississippi DUI appellate proceeding, suppressed for years through false certifications about its status—certifications that directly sustained the Texas felony—depriving [Reardon] of the appellate mandate that would have established from 2022 onward that the enhancement predicate did not exist.

Dkt. 58 at 55–56. Reardon recognizes that this is a "backward-looking access claim." *Id.* at 55.

A backward-looking denial-of-access claim "covers claims not in aid of a class of suits yet to be litigated, but of specific cases that cannot now be tried (or tried with all material evidence), no matter what official action may be in the future." *Christopher v. Harbury*, 536 U.S. 403, 413–14 (2002). "The official acts claimed to have denied access may allegedly have caused the loss or inadequate settlement of a meritorious case, the loss of an opportunity to sue, or the loss of an opportunity to seek some particular order of relief." *Id.* (cleaned up). "The ultimate object of these sorts of [backward-looking] access claims, then, is not the judgment in a further lawsuit, but simply the judgment in the access claim itself, in providing relief obtainable in no other suit in the future." *Id.* As the Supreme Court has explained:

> [B]ecause these backward-looking cases are brought to get relief unobtainable in other suits, the remedy sought must itself be identified to hedge against the risk that an access claim be tried all the way through, only to find that the court can award no remedy that the plaintiff could not have been awarded on a presently existing claim.

*Id.* at 416.

Here, Reardon does not identify any remedy for his access claim. Although Reardon seeks damages generally, he does not identify a nonduplicative remedy unavailable through his other claims, and he does not plausibly explain how this court could remedy the Mississippi custody, appellate, or closed federal

29

proceedings. As to the Mississippi DUI appeal, it is not clear what remedy this court could offer given that the Mississippi Circuit Court has already reinstated Reardon's appeal. Nor would this court have jurisdiction to do anything about Reardon's child custody proceedings in Mississippi. As for Reardon's civil rights action in the Northern District of Mississippi, that case was dismissed and closed on June 28, 2023, more than six weeks *before* Reardon was arrested in Galveston on August 10, 2023. *See Reardon*, 2023 WL 4241668, at \*14. Accordingly, it is difficult to fathom how any of the events that took place in Texas could have denied Reardon access to the court in the Northern District of Mississippi. For these reasons, Reardon's denial of access claim fails.

### 7.     *Claims Against Doe Officers*

Reardon names John Doe Officers 1–5 as defendants in his pleading. Reardon does not, however, assert a single specific allegation against any Doe defendant beyond impermissible, undifferentiated group pleading. Accordingly, the court should sua sponte dismiss Reardon's claims against the Doe defendants for failure to state a claim. *See Century Sur. Co.*, 799 F.3d at 372.

### 8.     *Civil Rights Conspiracy*

Reardon alleges that "James, Beavers, Busby, Osteen, Doraty, and their institutional principals reached a mutual understanding, agreement, and meeting of the minds to deprive [Reardon] of his clearly established constitutional rights." Dkt. 58 at 47. For all the reasons discussed above, Reardon has stated only one constitutional claim—unreasonable seizure—against only two defendants: Doraty and Osteen. Doraty and Osteen, however, are entitled to qualified immunity on that claim. Where "all officers alleged to have violated [Reardon]'s [constitutional] rights are entitled to qualified immunity . . . , the conspiracy claim is not actionable." *Hale v. Townley*, 45 F.3d 914, 921 (5th Cir. 1995). Thus, the court should dismiss Reardon's civil rights conspiracy claim.

### 9.    *State Law Claims*

Having established that Doraty and Osteen are entitled to qualified immunity on Reardon's unreasonable seizure claim, and that Reardon fails to otherwise state a claim under federal law, I recommend that this court decline to exercise supplemental jurisdiction over Reardon's state law claims for malicious prosecution, conversion of property, false imprisonment, abuse of process, assault, battery, civil conspiracy, gross negligence, and intentional infliction of emotional distress. *See* 28 U.S.C. § 1367(c)(3); *Duncan v. City of Freeport*, No. 3:23-cv-255, 2024 WL 2819118, at *4 (S.D. Tex. Jan. 23, 2024) (declining to exercise supplemental jurisdiction over plaintiff's state law claims after dismissing all federal claims).

## OTHER PENDING MOTIONS

Before Reardon's claims can be dismissed, I must address Reardon's outstanding motions: (1) Reardon's motion to strike Busby's affidavit and for sanctions (Dkt. 61); (2) Reardon's motion for a TRO (Dkt. 84); (3) Reardon's motion for leave to file a supplemental complaint (Dkt. 85); and (4) Reardon's motion to expedite consideration of his motion for a TRO (Dkt. 86).

### A.    MOTION TO STRIKE AND FOR SANCTIONS (DKT. 61)[11]

Reardon moves to strike an affidavit that Busby submitted on November 12, 2025, in connection with his first motion to dismiss for lack of personal jurisdiction.[12] Reardon also moves for sanctions, arguing that Busby misled this court when he said that he never "personally responded to a request from the Galveston County District Attorney's Office for a status update on Matthew Reardon's Mississippi DUI conviction in the Lafayette Circuit Court." Dkt. 46-1 at 1. Although Reardon's motion is directed to the affidavit that Busby filed in

---

[11] A motion to strike an affidavit is a non-dispositive motion on which a magistrate judge may rule. *See Lloreda v. Dolgencorp of Tex., Inc.*, No. 3:21-cv-00171, 2022 WL 203258, at *1 n.2 (S.D. Tex. Jan. 24, 2022).

[12] I denied Busby's first motion to dismiss as moot when I granted Reardon leave to file a second amended complaint. *See* Dkt. 56 at 3.

connection with his first motion to dismiss, the language that Reardon finds misleading appears verbatim in the affidavit that Busby submitted with his second motion to dismiss for lack of personal jurisdiction. *See* Dkt. 65-1. Thus, I will consider the motion to strike in reference to both affidavits.

Admittedly, the word "personally" is doing some heavy lifting. But the record shows that Busby did not lie: Jubera is the one who personally communicated with Galveston authorities, not Busby. Accordingly, Busby did not mislead this court, neither of his affidavits should be struck, and sanctions are not warranted.

### B. MOTION FOR LEAVE (DKT. 85)[13]

Reardon requests leave to file a supplemental complaint. The allegations that Reardon wants to add to his pleading concern recent events by non-parties: United States Marshals, unknown Galveston police officers, and Marty's City Auto. *See* Dkt. 85-1. If Reardon wants to assert a claim against these individuals, he should do so in a separate action. Reardon's motion for leave to file a supplemental complaint is denied.

### C. TRO REQUEST (DKT. 84) & MOTION TO EXPEDITE (DKT. 86)

Finally, Reardon requests a TRO (Dkt. 84) and expedited consideration of the same (Dkt. 86). I recommend that the court deny Reardon's request for a TRO. I deny the request to expedite consideration as moot.

A TRO is a type of preliminary injunction. *See Cooper v. Raissez*, No. 5:24-cv-278, 2025 WL 2844781, at *1 (N.D. Tex. Sept. 19, 2025). "To obtain injunctive relief under Texas or federal law, [Reardon] must show a substantial likelihood of success on the merits or a probable right to relief; this standard necessarily requires a valid cause of action." *Speakman v. Shellpoint Mortg. Servicing*, No. 3:26-cv-00039, 2026 WL 1333404, at *2 (S.D. Tex. May 13, 2026). Because I have recommended dismissal of all Reardon's constitutional claims, and for the court to

---

[13] A motion for leave to amend is a non-dispositive matter on which a magistrate judge may rule. *See Talbert v. Am. Risk Ins. Co.*, 405 F. App'x 848, 851 (5th Cir. 2010).

decline to exercise supplemental jurisdiction over Reardon's state law claims, the court should deny Reardon's request for a TRO.

## CONCLUSION

For the reasons discussed above, I deny Reardon's motion to strike (Dkt. 61), his motion for leave to file a supplemental complaint (Dkt. 85), and his motion to expedite (Dkt. 86). I recommend that the court: (1) grant Busby's motion to dismiss for lack of personal jurisdiction (Dkt. 65); (2) grant the Galveston Defendants' and Beavers's motions to dismiss (Dkts. 68, 69); (3) sua sponte dismiss James, Galveston County, and the Doe defendants for failure to state a claim; (4) decline to exercise supplemental jurisdiction over Reardon's state law claims; and (5) deny Reardon's request for injunctive relief (Dkt. 84).

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this __14th__ day of July 2026.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE